**SOUTHWESTERN BELL
TELEPHONE COMPANY, Appellant,**

v.

**MARKETING ON HOLD, INC.
d/b/a Southwest Tariff
Analyst, Appellee.**

No. 13–03–287–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 4, 2005.

Christopher D. Kratovil, Robert E. Davis, Weston Clark Loegering, Hughes & Luce, LLP, Kirsten M. Castaneda, Locke, Liddell & Sapp, Dallas, Javier Aguilar, Geoffrey Amsel, Cynthia F. Malone, San Antonio, Mike A. Hatchell, Molly H. Hatchell, Christopher Dove, Locke, Liddell & Sapp, LLP, Austin, Tracey Ellison, John W. Kelly, Jr., Bellaire, Ruben R. Pena, Law Office of Ruben R. Pena, P.C., Harlingen, for appellant.

J. Marcus Hill, Hill & Hill, Thomas Bray, Russell T. Lloyd, John M. O'quinn, O'quinn & Laminack, Houston, Manuel M. Vela, Vela & Vela, Harlingen, Ernesto Gamez, Jr., Law Office of Ernesto Gamez, Jr., Brownsville, for appellee.

Before Justices YANEZ, CASTILLO and GARZA.

## OPINION

Opinion by Justice CASTILLO.

This interlocutory appeal is brought, pursuant to Texas Civil Practice and Remedies Code section § 51.014(a)(3),[1] from the trial court's order of May 6, 2003, certifying a class. We affirm.

### I. Background

The underlying class action is brought on behalf of customers of Southwestern Bell Telephone, L.P. ("Southwestern Bell") for improper pass-through and collection of certain fees. The fees are initially assessed against Southwestern Bell under various city ordinances to compensate the cities for costs of administering public rights-of-way. The ordinances recognize Southwestern Bell's authority to pass the fees through to its telephone subscribers, but provide that Southwestern Bell is neither to profit nor to sustain any loss therefrom. The class charges that some fees were improperly "passed through" or charged to subscribers of certain services, specifically SmartTrunk, Digital Loop, and Hotel/Motel measured service (all designed for different classes of business customers).

Marketing on Hold, Inc., d/b/a Southwestern Tariff Analyst ("STA") is a company that audits its customers' telephone bills and represents them in seeking refunds from the service provider. In the course of those audits, STA discovered the improper charges. Some of STA's customers assigned their claims to STA,[2] and STA then brought the underlying suit in its own name, seeking to be identified as class representative for nearly 7,000 customers.[3] STA itself was never a subscriber to the services in issue and never paid any of the disputed fees.

The trial court held a four-day hearing on the issue of class certification. All parties were represented at the hearing and significant volumes of evidence were introduced and reviewed. The parties were given the opportunity to file additional and supplemental briefs, which the trial court reviewed and considered. The court issued a 28-page order on May 6, 2003, certifying the class. The class was defined to include subscribers to the services identified above, who "made payment(s) to Southwestern Bell...." The trial court found that the requisites of rule 42(a), numerosity, commonality, typicality and

---

1. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3) (Vernon Supp.2004–05).

2. STA owns 100% of the claims, but the customers retain an overriding interest in 70% of any recovery realized by STA.

3. Claims brought by STA included breach of contract, unjust enrichment, breach of express warranty for services, and negligence per se.

adequacy of representation, were satisfied. Tex. R. Civ. P. 42(a). Extensive discussion in the order is directed to the suitability of STA as a class representative. The court found STA to be a proper representative by virtue of its ownership of the assigned claims.[4] The court found no conflicts of interest between the representative and the class, or between sub-classes.

The court also reviewed evidence and found that, under rule 42(b)(4) (Tex. R. Civ. P. 42(b)), questions of law and fact common to the members of the class predominated over any questions affecting only individual members, and that the class action was superior to other available methods to adjudicate the controversy. The trial court noted damages derived solely from economic injury, and found that evidence of those damages is susceptible to class-wide proof because billing practices of Southwestern Bell are consistent from customer to customer. The trial court further noted:

> Plaintiff [STA] is not seeking either consequential damages or punitive damages but is seeking economic damages in the form of a refund of the alleged overcharge. The collection of an overcharge, if any, can be determined by reference to the billing records ...

With respect to the claim of unjust enrichment, the trial court observed that a party must demonstrate that another obtained a benefit through fraud, duress or the taking of an undue advantage, but that plaintiff did not allege any fraud or duress. Therefore, the question of the taking of an undue advantage is a common issue which can be answered the same for all members of the class. The trial court also addressed the claim of breach of express warranty, finding that (1) Southwestern Bell presents its bills for services in substantially the same form to all its customers, including class members; (2) each bill contains a separate charge for municipal charges; (3) the bills, on their face, constitute representations that the bills are true and accurate; and (4) no independent inquiry is required into what representations were relied upon by each class member because the representation is uniform to all members of the class.[5] The trial court proceeded to review in detail its rationale for concluding that class certification was proper in the face of the challenges raised in this appeal.

## II. Issues on Appeal

Southwestern Bell urges that the certification of the class was improper because the prerequisites of rule 42 of the Texas Rules of Civil Procedure have not been satisfied. Southwestern Bell (1) challenges the class representative's standing as well as its ability to adequately represent the class; (2) challenges the predominance of common questions where (a) causes of action include the element of reliance, and (b) assessment of damages will require individualized review of cus-

---

4. The trial court noted numerous depositions and testimony, none of which supported allegations of barratry or impropriety in securing the assignments.

5. The trial court further noted that "[t]he question of whether or not the bills themselves, and the individual items in them, constitute representations that the bills are accurate and can be relied on is a question that is common to all members of the class.... The legal effect of the representation on the bill that certain charges are due and owing is a question the Court will address at the appropriate time. The Court's ruling will affect all members of the class equally.... If the Court determines that the bill is not a written representation of its accuracy and does not constitute an express warranty, then that ruling will apply equally to all members of the class.... The questions involved in this legal theory are class wide questions susceptible to class wide proof."

tomer bills and other records; and (3) contends that inherent conflicts of interest exist between (a) the class representative and class members, and (b) sub-groups of the class.

### III. Standard of Review

■ Our review of an interlocutory appeal from a class certification order is limited to determining whether the trial court's order constituted an abuse of discretion. *Ford Motor Co. v. Ocanas*, 138 S.W.3d 447, 451 (Tex.App.-Corpus Christi 2004, no pet.); *see also Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 690–91 (Tex. 2002). In reviewing a trial court's decision under an abuse of discretion standard, we must determine whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The exercise of discretion is within the sole province of the trial court, and an appellate court may not substitute its discretion for that of the trial judge. *Johnson v. Fourth Ct.App.*, 700 S.W.2d 916, 918 (Tex.1985). Rather, an abuse of discretion occurs only when the trial court reaches a decision that is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* at 917.

Although we discuss the propriety of the class certification in light of the claims asserted by the named plaintiffs, we in no way evaluate the merits of these claims. *See Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 404 (Tex.2000) ("Deciding the merits of the suit in order to determine its maintainability as a class action is not appropriate.").

■ The trial court must conduct a "rigorous analysis" to determine whether certification requirements have been met. *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex.2000). This rigorous analysis includes indicating how the claims will likely be tried so that conformity with rule 42 can be meaningfully evaluated. *Schein*, 102 S.W.3d at 690. Courts are to "go beyond the pleadings" and understand the "claims, defenses, relevant facts, and applicable substantive law" when determining whether the requirements of certification should be met. *Bernal*, 22 S.W.3d at 435.

■ Typically, under this standard of review, the appellate court must indulge every presumption favorable to the trial court's ruling. *Fidelity and Guar. Life Ins. Co. v. Pina*, 165 S.W.3d 416, 422 (Tex. App.-Corpus Christi 2005, no pet. h.) [6] (citing *Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24, 29 (Tex.App.-Houston [1st Dist.] 2000, pet dism'd w.o.j.)). On certification issues, however, the appellate court is not bound by this presumption and must independently determine whether the requirements of rule 42 have been fully satisfied. *Pina*, 165 S.W.3d at 422; *Ocanas*, 138 S.W.3d at 451; see also *Schein*, 102 S.W.3d at 691; *Bernal*, 22 S.W.3d at 435 (determining that actual compliance with rule 42 "must be demonstrated; it cannot be presumed").

### IV. Rule 42

■ Under rule 42(a), every class action must satisfy four threshold requirements: numerosity, commonality, typicality, and adequacy of representation. *See* Tex.R. Civ. P. 42(a). In addition, a proposed class action must also satisfy at least one of the subparts of rule 42(b). *See* Tex. R. Civ. P.

**6.** *Fidelity and Guar. Life Ins. Co. v. Pina,* 165 S.W.3d 416 (Tex.App.-Corpus Christi 2005, no pet. h.) has been designated as an opinion.

42(b). The trial court certified the class under rule 42(b)(4),[7] which permits class actions to be maintained when common questions of law or fact predominate and a class action is superior to other forms of adjudication. *See id.*

## V. Analysis

After reviewing the record, we conclude that the trial court conducted the requisite "rigorous analysis," demonstrated in the detailed order which included its findings of fact and conclusions of law. We now review the challenged issues, applying the abuse of discretion standard, to independently determine whether the requirements of rule 42 have been fully satisfied, *i.e.,* demonstrated and not presumed. *See Ocanas,* 138 S.W.3d at 451; *see also Schein,* 102 S.W.3d at 691; *Bernal,* 22 S.W.3d at 435.

**7.** At the time this class was certified, rule 42 contained four subdivisions. On January 1, 2004, the amendments to Rule 42(b), which now contains only three subdivisions, became effective. *See* TEX. R. CIV. P. 42(b). At the time of certification, rule 42(b)(4) read as follows:

(4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

TEX. R. CIV. P. 42(b)(4) (1977, amended 2004).

**8.** Prior to this litigation, there was a separate case involving virtually the same facts and

## A. The Class Representative

Southwestern Bell challenges the typicality of STA as class representative, and its standing to represent the class. STA acquired ownership of causes of action by virtue of assignments and is not, independent of those assignments, a member of the class.[8] The assignments are from businesses falling within two of the three sub-classes, and pre-date the commencement of this litigation.

Southwestern Bell contends that (1) STA lacks standing because it is not, independent of the assignments, a member of the class and has sustained no class injury; (2) the assignments are (a) void under the municipal ordinances permitting the pass-through of charges, (b) unenforceable under section 12.014(a) of the Texas Property Code (TEX. PROP. CODE ANN. § 12.014(a) (Vernon 2004)), and (c) void as against public policy. Southwestern Bell also chal-

circumstances, *Mireles v. Southwestern Bell Tel. Co.,* Cause No. 98–07–3003–E, in the 357th Judicial District Court, Cameron County, Texas. The putative class in *Mireles* included both residential and business customers of Southwestern Bell. STA was identified as a class member in that matter. (STA's brief states only that STA was a class member, "as were all of the businesses which assigned causes of action to STA.") The settlement in *Mireles* involved an agreement which did not encompass either distributed cash or service credits to class members, but which did encompass a broad release. STA formally objected to the settlement because it would eliminate claims of the business customers, filed a petition in intervention seeking to represent that group, and contacted business customers of STA who were members of that group. Five of those customers, for whom STA provided auditing services, gave STA an assignment of their claims. Prior to entry of the settlement, the parties in that suit agreed to modify the release so that it would not affect the business customers' claims, which were then "carved out" and brought separately in this litigation.

lenges the adequacy of representation by STA, in light of asserted conflicts of interest.

### 1. Typicality or Standing

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Bernal,* 22 S.W.3d at 433. A class representative must possess the same interests and suffer the same injury as unnamed or absent class members. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *State Farm Mut. Auto. Ins. Co. v. Lopez,* 45 S.W.3d 182, 191 (Tex.App.-Corpus Christi 2001), *rev'd on other grounds,* 156 S.W.3d 550 (Tex.2004). To be typical, class representatives' claims need not be identical, but must arise from the same event or course of conduct giving rise to the claims of other class members and must also be based on the same legal theories. *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 653 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.). Other courts have described this as a requisite "nexus between the injury suffered by the representative and the injuries suffered by other members of the class." *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 372 (Tex.App.-El Paso 1993, no writ).

Southwestern Bell argues that STA's status is not only atypical, but that STA lacks standing, inasmuch as STA was never a member of the class in its own right, and thus never sustained any of the injuries for which the suit is brought. STA counters that, by virtue of the assignments, it "stands in the shoes" of the assignors and has every entitlement to pursue the interests it now owns.

The court, in *State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 705–08 (Tex.1996), extensively explored the assignability of causes of action. While causes of action may be generally assignable, with notable exceptions,[9] the *Gandy* court nevertheless observed:

> Practicalities of the modern world have made free alienation of choses in action the general rule, but they have not entirely dispelled the common law's reservations to alienability, or displaced the role of equity or policy in shaping the rule. Even today, the general rule is that a contractual assignment may be "inoperative on grounds of public policy."

*Gandy,* 925 S.W.2d at 707 (citing RESTATEMENT (SECOND) OF CONTRACTS § 317(2)(b) (1981). The *Gandy* court, noting that the Restatement identifies numerous limitations on alienation of choses in action, continued:

> The increase in litigation caused by assignments remains a matter of concern. So does the effect of alienability on the parties and circumstances in the original transaction or occurrence. As Holmes succinctly summarized, "the history of early law everywhere shows that the difficulty of transferring a mere right was greatly felt when the situation of fact from which it sprung could not also be transferred. Analysis shows that the difficulty is real."

*Id.* (citing Oliver W. Holmes, Jr., THE COMMON LAW 340, 409 (Boston; Little, Brown, and Company 1881)).

Texas courts recognize that many causes of action are property rights which may be assigned. *Pineda v. PMI Mortgage Ins. Co.,* 843 S.W.2d 660, 675 (Tex.App.-Corpus Christi 1992, writ denied). However, as-

---

9. Assignment of certain causes of action are per se void, as against public policy. *See* *State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 707–11 (Tex.1996).

signability as a general proposition is not in contention with respect to this issue as raised by Southwestern Bell. Rather, it is the ability of the assignee STA to represent an entire class in an action where it has not personally sustained any injury, and in which it would not participate at all but for the assignments.

STA cites to federal cases from Indiana, Michigan, and various other jurisdictions for the proposition that an assignee may properly stand in the shoes of the assignor and represent the interests of the class.[10]

We note that application of Texas Rule of Civil Procedure 42, dealing with class actions, has been modeled after Federal Rule of Procedure 23, and "federal decisions and authorities interpreting current federal class action requirements are persuasive in Texas actions." *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 452 (Tex.2000). STA directs us to several federal cases which support that an assignee may serve as a class representative.

*McDaniel v. N. Am. Indemnity,* 2003 WL 260704, 2003 U.S. Dist. LEXIS 1663 (S.D.Ind. Jan. 27, 2003) involved a class action brought by participants or beneficiaries of welfare benefit plans. *Id.* 2003 WL 260704 at *2, *2–*3. Claims included breach of fiduciary duties and other ERISA violations. *Id.* 2003 WL 260704 at *2, *5. Pedcor, one of the identified class representatives and an assignee of claims for benefits, brought the same claims as other members of the class. *Id.* 2003 WL 260704 at *3–*4, *10–*11. "Each of Plaintiffs' claims arises from Defendants' alleged course of conduct toward the class, and each of Plaintiffs' claims is based upon the same legal theory as the class members. Plaintiffs' claims are typical of the class, and the typicality requirement of Rule 23(a) is satisfied." *Id.* 2003 WL 260704 at *4, *11. The court found no problem with Pedcor serving as a class representative, despite argument that it was not typical by virtue of the assignments. *Id.* 2003 WL 260704 at *3–*4, *10–*11.

*In re Cardizem CD Antitrust Litigation,* 200 F.R.D. 297 (E.D.Mich.2001) dealt with antitrust claims under the Sherman Antitrust Act. *Id.* at 300. Plaintiffs seeking certification of the class were either direct purchasers, or their assignees. *Id.* The court focused not on the characteristics of the class representative, but on the claims asserted to assess typicality:

> Typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff.... As one court noted: 'there is nothing in Rule 23(a)(3) which requires named plaintiffs to be clones of each other or clones of other class members.'
>
> * * *
>
> The assignment issue Defendants raise presents a question of law that can readily be resolved by the Court without skewing the focus of the litigation or creating a significant danger of distracting [the identified class representative's] ability to pursue the interests of the absent class members. Contrary to Defendants' arguments, it does not present a unique defense that will consume the merits of this litigation.

*Id.,* 200 F.R.D. at 304–05 (citations omitted). Because the class representative stood in the shoes of the absent class members, and its claims arose from the

---

10. *See Jackson v. Thweatt,* 883 S.W.2d 171, 174 (Tex.1994) (cert. denied sub nom.) (concluding that assignees, as the FDIC's successors in interest, were "entitled to the benefits of section 1821(d)(14) pursuant to the common law maxim that 'an assignee stands in the shoes of his assignor.' ").

same agreement that gave rise to the other class members' claims, *Id.* at 305, typicality was satisfied and the class was certified.[11]

In *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236 (11th Cir.2001), physicians' assistants brought state insurance violation claims for failure to pay for services. *Id.* at 1239. The matter was transferred to federal court under the ERISA preemption provisions, *Id.* at 1239–40, where it was contended that preemption did not apply because this was not an ERISA claim—the physicians assistants lacked standing to proceed under ERISA as they were not participants or beneficiaries of an employee health benefit plan. *Id.* at 1240. The eleventh circuit noted it had previously held that nothing in the federal statutes prohibited the assignment of these types of rights, which provided a plaintiff with derivative standing. *Id.* at 1241. However, in *Hobbs,* the court faced a situation which was the opposite of the situation presented here: because there was no evidence of assignments to the physicians assistants, the class action could not proceed. *Id.* at 1241.

We conclude that the result reached in *Hobbs* does not support an argument that assignees may not act as class representatives. *Id.* As the courts did in these federal class actions, we have focused on the nature of the claims brought, rather than the characteristics of the class representative. In light of the deference we accord to the trial court's "rigorous analysis" and decision, and in light of our own analysis, we are in accord with the trial court that (1) the claims brought are typical and substantially similar to claims advanced on behalf of all class members, and (2) STA has standing, by virtue of the assignments, to bring those claims.[12]

## 2. Applicability of the Ordinances to the Class Representative

▮ Southwestern Bell contends that language contained in the municipal ordinances, which authorize Southwestern Bell's pass-through of the various fees to its customers, invalidates the assignments to STA. Language in the ordinance included in the record, tendered as typical of the various applicable ordinances, provides: "This Ordinance and any rights or privileges hereunder shall not be assignable to any other entity without the express consent of the CITY." Southwestern Bell argues that because the class members' claims derive from and depend on the criteria in each ordinance, the assignments are barred by those ordinances.[13]

The pleadings allege that Southwestern Bell has improperly "passed-through" various charges to its customers. We reject the contention that a customer's right to challenge the methodology applied in implementing the "pass-through" is derivative of the contract or ordinance limiting the ability of either Southwestern Bell or the City to make any assignment of its

11. STA also cites *Pavano v. Shalala*, 95 F.3d 147 (2d Cir.1996), out of New York, in which plaintiffs included Medicare beneficiaries "and their assignees." *Id.* at 148. Typicality of the class representative was not raised as an issue; the class was certified.

12. We note the trial court further expressly found "nothing improper about the methods by which Plaintiff acquired the assignments."

13. Relevant claims include that Southwestern Bell "is charging so-called 'municipal charges' on certain customer services charges ... when such customer services charges do not satisfy all of the required conditions under the applicable ordinances or franchise agreements."

rights or privileges.[14]

> We are required to discern and give effect to the intent of the enacting body. To achieve this goal, we must first attempt to discern that intent must come [sic] from the plain language of the ordinance. Our obligation, however, to enforce the plain language of the ordinance does not authorize us to employ a "bloodless literalism in which text is viewed as if it had no context." We are required to consider the context and the consequences that would follow from a particular interpretation, and we must avoid interpretations that would produce absurd results or render other language mere surplusage.

*City of Pearland v. Reliant Energy Entex,* 62 S.W.3d 253, 255 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citations omitted).

The fact that the ordinance permits a "pass through" of the fees does not subject all customers of Southwestern Bell who are subsequently billed for the "pass-through" fees to the restrictive terms of the ordinance that are binding upon either Southwestern Bell or the City.

### 3. The Texas Property Code

Southwestern Bell urges that section 12.014 of the property code precludes the assignment of a cause of action prior to the date on which suit is filed. *See* TEX. PROP. CODE ANN. § 12.014(a) (Vernon 2004). The statute provides that "a judgment or part of a judgment of a court of record or an interest in a cause of action on which suit has been filed may be sold, regardless of whether the judgment or cause of action

is assignable in law or equity if the transfer is in writing." *Id.*

Southwestern Bell contends that this statute is an express effort by the legislature to limit assignability of causes of action to only after a suit is filed. The case relied upon by *Southwestern Bell, McLaury v. Watelsky,* 39 Tex.Civ.App. 394, 87 S.W. 1045 (1905, no writ), clearly dealt with the assignment of a cause of action on which suit had already been brought. *Id.* at 1046. Our sister court observed that under the old common law, causes of action for personal injuries were not assignable at all. *Id.* at 1049. "It has been held that under said article [the new statute] such an assignment to attorneys as compensation for prosecuting the suit, is valid as against those having notice, though made before a suit was commenced, and not filed or noted on the docket." *Id.*

We do not find that the statute in issue here was a direct effort by the legislature to limit assignability of causes of action to only those situations where suit has already been filed, but, rather, that its purpose was to require adequate notice of any such assignment:

> In the meantime the Legislature, in 1889, had enacted article 6833,[15] which provided that the sale of any cause of action or interest therein after suit had been filed should be evidenced by written transfer filed among the papers of the cause, and that said article should apply to all suits, claims, and causes of action, whether assignable in law and equity, or not. This statute is one of notice, and is also legislative recognition of the right to barter and sell interests in ... suits.

---

14. We further note that a suit brought against Southwestern Bell for improper levying of charges is not a "right or benefit" of Southwestern Bell under the ordinance.

15. We note that Texas revised civil statute article 4647 (enacted in 1895) and article 6833 (enacted in 1911) are both predecessor statutes to TEX. PROP. CODE ANN. § 12.014(a) (Vernon 2004).

*McCloskey v. San Antonio Traction Co.,* 192 S.W. 1116, 1119 (Tex.Civ.App.-San Antonio 1917, writ ref'd) (citing *Gulf, Colorado & Santa Fe Ry. Co. v. Wooten,* 10 Tex.Civ.App. 54, 30 S.W. 684 (1895, writ dism'd) ("the Texas statute regulating the transfer of judgments, causes of action, and interests therein, is merely one of notice")).[16]

We conclude that nothing in the statute cited by Southwestern Bell precludes or invalidates the assignments at issue in this matter simply because they were made prior to the filing of suit.

#### 4. Public Policy

■ Southwestern Bell argues that permitting an assignee to function as the class representative in the circumstances of this case will open the floodgates to improper solicitation of causes of action and "entrepreneurial" class actions. We note the trial court examined this issue at length, finding that (1) STA only took assignments from pre-existing customers, (2) those customers were all previously members of the *Mireles* class action from which the claims in this case were carved, and (3) STA did not improperly solicit the customers. The trial court concluded, in detailed findings reflecting a considered and rigorous analysis, that "under the facts of this case, the dangers asserted by the Defendant are unfounded." The Texas Supreme Court has identified limited situations in which an assignment should be declared void as against public policy.[17] None of those situations are presented under the facts of this case. We decline to overrule the trial court's findings on the basis of Southwestern Bell's public policy arguments.

#### 5. Adequacy of Representation

■ Southwestern Bell argues that STA is inadequate as a class representative for several reasons. First, it argues there is inherent antagonism between STA's representation of all the various class members, because payment or credit to one group will necessarily entail additional charges to other portions of the group when any charges found to have been improper are reallocated amongst the customers. Southwestern Bell also argues that inherent conflicts exist because (1) STA has only a financial motivation to pursue the class action and, therefore, will not be amenable to alternative non-monetary remedies; (2) assignments given to STA do not include the group of business interests who paid for the Hotel/Motel measured service, and STA therefore cannot be relied upon to adequately represent that sub-class; and (3) a corporate class representative is inappropriate.

■ Adequacy of representation is a question of fact left to the sound discre-

---

**16.** The *McCloskey* court continued:

From the foregoing, there can be no doubt that causes of action for personal injuries are property subject to sale, barter, contract, or gift as any other property, and that the common and civil law inhibition and condemnation of dealing in causes of action is obsolete in Texas. Since a claimant has the right to assign all or any part of his cause of action, and all persons have the right to buy or acquire the same or any part thereof, it is not unlawful for the appellant to acquire an interest in any claim or claims.

*McCloskey v. San Antonio Traction Co.,* 192 S.W. 1116, 1120 (Tex.Civ.App.-San Antonio 1917, writ ref'd); *see also Hunter v. B.E. Porter, Inc.,* 81 S.W.2d 774, 775 (Tex.Civ. App.-Dallas 1935, no writ).

**17.** *See Gandy,* 925 S.W.2d at 707–11; *see also PPG Indus., Inc. v. JMB/Centers Partners, Ltd.,* 146 S.W.3d 79, 87 n. 31 (Tex.2004) (noting the distinction between DTPA claims, which are personal and punitive, and warranty claims, which are property-based).

tion of the trial court, and the trial court does not abuse its discretion in finding adequacy if there is evidence to support the finding. *Farmers Ins. Exch. v. Leonard,* 125 S.W.3d 55, 66 (Tex.App.-Austin 2003, pet. denied) (citing *Glassell v. Ellis,* 956 S.W.2d 676, 681–82 (Tex.App.-Texarkana 1997, pet. dism'd w.o.j.). Only a conflict that goes to the very subject matter of the litigation will defeat a finding of adequacy. *Id.* (citing *Nissan Motor Co., Ltd. v. Fry,* 27 S.W.3d 573, 583 (Tex.App.-Corpus Christi 2000, pet. denied)).

The trial court, after a rigorous analysis and four days of hearing and testimony, made several express findings, including that:

(1) Evidence of STA's knowledge and expertise about the billing procedures and information retrieval systems of Southwestern Bell gives STA a superior ability to pursue this litigation and supervise activities of class counsel;

(2) STA has taken assignments of claims ranging from small to large, STA therefore has an interest in asserting the rights of all members of the putative class, and "there is sufficient evidence to rule that the interests of STA are aligned with and not antagonistic to unnamed putative class members;"

(3) Claims related to the Hotel/Motel business subclass arise out of the same unauthorized charge of municipal fees for services as the claims advanced for the rest of the class, are substantially similar to the claims of the putative classes as a whole, there is no evidence of any conflict between the subclasses, and the claims are not competing;

(4) There is no basis for allegations of impropriety or barratry on the part of individual employees/experts of STA, including Mr. Wilder, Mr. Shelton,[18] and Mr. Clapsaddle, these individuals can adequately speak for STA as representative of the class, and defenses of Southwestern Bell can be resolved without skewing the focus of the litigation or degrading STA's ability to pursue interests of the absent class members;[19]

(5) There is no basis for finding a conflict or antagonism between STA and the rest of the class, and any alleged intra-class conflict is too speculative and hypothetical to bar class certification;

(6) Sufficient evidence was presented to find that "STA will vigorously prosecute this cause of action on behalf of the putative class as class representative," and that, but for the efforts of STA, the class members' claims would have been included in the *Mireles* settlement which would have paid them nothing.

The record contains evidence, including hearing and deposition testimony, to support the trial court's findings as to adequacy.[20] We conclude there is no conflict going "to the very subject matter of the litigation," *see Leonard,* 125 S.W.3d at 66, and we will not, on this basis, disturb the

**18.** Southwestern Bell made no attack on the credibility of Mr. Shelton, STA's president, as a witness.

**19.** The trial court found "no evidence that these issues [suitability of Mr. Wilder and Mr. Clapsaddle] are relevant to the claims of the litigation such that they could become the focus of the litigation to the detriment of the actual class claims."

**20.** We note Southwestern Bell's arguments that the persons who represent STA are "fa-

cially inadequate" to represent the interests of the class and control the litigation. The trial court squarely addressed these contentions and in its order made specific and extensive findings that dispensed with objections pertaining to Wilder, Shelton and Clapsaddle, finding no impropriety or barratry, that Shelton has been an active and credible participant, and that STA has and will continue to vigorously pursue the interests of the class.

conclusion of the trial court that STA can adequately represent the interests of absent class members as class representative.[21]

## B. Predominance Issues

Even if all requisites of rule 42(a) are satisfied, STA is required to demonstrate that a class action is maintainable because it satisfies one of the requisites of rule 42(b). *See* Tex. R. Civ. P. 42(a); 42(b)(3).[22] In this suit, STA has argued, and the trial court concluded, that a class action is appropriate because common issues of fact and law predominate. Southwestern Bell argues, to the contrary, that the litigation effort will be predominated by individualized rather than common inquiries and analyses, both as to liability and as to damages. It argues that (1) causes of action for breach of express warranty and fraud (as part of the unjust enrichment claim) include the element of reliance which militates against a class action, and (2) damages cannot be determined absent an individualized review and analysis of each class member's own billings and payments.[23]

■■■ We note that predominance is one of the most stringent requirements to be satisfied. *Bernal*, 22 S.W.3d at 433–35. The test for establishing predominance of common issues is whether those issues will be the object of most of the efforts of the parties and the court, not whether common issues outnumber individual issues. *Id.* at 434.

## 1. The Element of Reliance

Southwestern Bell argues that the existence of reliance as an element precludes a finding of predominance of common issues. Several causes of action are identified in the live pleadings, including unjust enrichment and breach of express warranty.

Reliance may be a requisite element of a claim for breach of express warranty.

> While 'particular' reliance may not be necessary, we have held several times that something rather like it is. The basis-of-the-bargain requirement 'loosely reflects the common-law express warranty requirement of reliance,' and 'reliance is also not only relevant to, but an element of proof of, plaintiffs' claims of breach of express warranty (to a certain extent).

*PPG Indus., Inc. v. JMB/Houston Centers Partners, Ltd.*, 146 S.W.3d 79, 99 (Tex. 2004).[24]

■■■ Southwestern Bell also asserts that reliance is a requisite element of the cause of action for unjust enrichment. We agree that a person may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, *or* the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Fraud is not a requisite component for such a recovery. Indeed, unjust en-

---

**21.** In addition, we find no basis for the contention that a corporation may not serve as a class representative.

**22.** *See* n. 5 above.

**23.** We note Southwestern Bell also argues that core liability issues "will most likely be a question of law for the court, or at least a mixed question of law and fact, that can be resolved with a minimum of proof and effort.

The bulk of the litigation effort will be devoted to determining and assessing damages, if any."

**24.** In *PPG*, the majority noted the distinctions between DTPA claims, which are personal and punitive, and warranty claims, which are property-based and therefore assignable. *PPG Indus., Inc. v. JMB/Houston Centers Partners, Ltd.*, 146 S.W.3d 79, 87–92 (Tex.2004).

richment is not a distinct independent cause of action, but a theory of recovery. *Mowbray v. Avery,* 76 S.W.3d 663, 679 (Tex.App.-Corpus Christi 2002, pet. denied). Unjust enrichment is based on the equitable principle that one who receives benefits unjustly should make restitution for those benefits. *Villarreal v. Grant Geophysical, Inc.,* 136 S.W.3d 265, 270 (Tex.App.-San Antonio 2004, pet denied); *Mowbray,* 76 S.W.3d at 679; *Bransom v. Standard Hardware, Inc.,* 874 S.W.2d 919, 927 (Tex.App.-Fort Worth 1994, writ denied). To be entitled to restitution under a theory of unjust enrichment, the plaintiff must show the party sought to be charged had wrongfully secured a benefit or had passively received one which would be unconscionable for that party to retain. *Villarreal,* 136 S.W.3d at 270; *Matagorda County v. Texas Ass'n of Counties County Gov't Risk Mgmt. Pool,* 975 S.W.2d 782, 785 (Tex.App.-Corpus Christi 1998), *aff'd,* 52 S.W.3d 128 (Tex.2000). The taking of an undue advantage does not necessarily encompass the element of reliance.

■ Even if we assume, without deciding, that reliance is a requisite element of one of these claims, a class action is not necessarily defeated. The issue is whether that element will become the focus of the litigation, consuming the attention of the parties and the court and thereby defeating the predominance of common issues. *Bernal,* 22 S.W.3d at 434. Here, Southwestern Bell asserts that presentation of its bills to customers, which include a charge for franchise or municipal fees, is a representation that the charge is due and owing, and one upon which customers necessarily relied. Even if true, it is clear that such reliance would have been classwide, not individualized. We agree with the trial court that any such reliance would have affected each class member in the same manner,[25] and we therefore conclude that neither the cause of action for breach of express warranty nor the theory of unjust enrichment is a bar to certification of the class.

## 2. Assessment of Damages

■ Southwestern Bell also urges that, in the event of a finding of liability, any calculation of damages will require such an individualized analysis of each customer's bill and payment schedule that any predominance of common issues will be defeated. A long list of potential individualized inquiries is suggested by Southwestern Bell. However, those contentions were directly addressed at the certification hearings. Testimony was presented that a computer program can be constructed to review the bills and payments and perform the requisite mathematical calculations to determine damages and their allocation to class members. Southwestern Bell rejects that testimony and contends it is entitled to a fair opportunity to individual determination of damages for each of the claims. Southwestern Bell certainly retains the right to dispute accuracy of calculations generated by a computer model. Nevertheless, the trial court concluded that:

> form to all its customers; (4) any representation based on those bills is a written representation which is uniform to all members of the class; and (5) if the charges were unauthorized for one member, they were unauthorized for all. In short, the trial court found these to be common issues to be resolved by the trier of fact.

**25.** The trial court extensively analyzed and made findings with respect to these reliance issues, including the following: (1) billing procedures are uniform for each member of the class; (2) whether or not Southwestern Bell took an undue advantage is a common issue to be answered the same for all members of the class; (3) Southwestern Bell presents bills for services in substantially the same

> [I]nformation required for the identification of class members, the determination of the amount of unauthorized municipal charges, if any, collected by Defendant from each class member, and the calculation of damages, is available in electronically or visually recoverable form from SWBT [Southwestern Bell] records. Extensive testimony was introduced on the subject of the information which might not be available through defendants' records in electronic format.... After evaluating the testimony presented by both sides, the Court finds that the accumulation of evidence from Defendants' records is manageable and can be accomplished without undue delay. The Court finds that the records of Defendant can be used to identify members of the class and calculate damages should that become necessary.

We remain mindful that our role is to indulge every presumption favorable to the trial court's ruling. *Pina,* 165 S.W.3d at 422 (citing *Graebel/Houston Movers, Inc. v. Chastain,* 26 S.W.3d 24, 29 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.)), and then not to be bound by that presumption, but to independently determine whether the requirements of rule 42 have been fully satisfied. *Id.; Ocanas,* 138 S.W.3d at 451; *see also Schein,* 102 S.W.3d at 691; *Bernal,* 22 S.W.3d at 435 (determining that actual compliance with rule 42 "must be demonstrated; it cannot be presumed").

We conclude, based upon our independent review, that the trial court performed a rigorous analysis of the various aspects that must be satisfied before a class action can be certified under rule 42, that the trial court found a basis in the evidence for its conclusions and findings, that the trial court did not err as a matter of law in reaching its conclusions, and that the class was properly certified.[26] We make no conclusions as to the merits of any of the claims presented.

## VI. Conclusion

We affirm the order of the court certifying the underlying matter as a class action and remand for further proceedings on the merits.

[redacted]

26. We also note the trial court's attention to how the matter would be tried and find that it adequately presented a viable trial plan.