IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0748
════════════
 
Southwestern Bell Telephone 
Company,
Petitioner,
 
v.
 
Marketing on Hold Inc., d/b/a 
Southwest Tariff Analyst,
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Thirteenth District of Texas
════════════════════════════════════════════════════
 
Argued March 22, 2007
 
            
Justice O’Neill, joined by 
Chief Justice Jefferson and Justice Medina, dissenting.
 
 
            
The Court concludes that Marketing on Hold, doing business as Southwest 
Tariff Analyst (STA), holds valid assignments of claims typical of the class, 
has standing to assert its claims as a class member, is neither a stranger to 
the litigation nor a class-action entrepreneur, and will not disrupt the 
class-suit vehicle or distort the judicial process. Yet the Court decides STA is 
not an adequate class representative based on the potential for hypothetical 
conflicts that have no basis in the record. The Court states that it is not 
deciding whether an assignee can ever be an adequate class representative, but 
if STA doesn’t qualify it is hard to imagine who would. The assignors were 
established STA business customers who relied on STA’s 
superior knowledge about Southwestern Bell’s billing procedures, information 
retrieval systems, and the tariffs that govern this highly regulated industry, 
and no antagonism or conflict exists that would affect STA’s adequacy to represent the class. In my view, STA’s unique expertise gives it an ability superior to that 
of any other class member to pursue this litigation as class representative and 
supervise the activities of class counsel, as the trial court found. Because the 
Court concludes otherwise, I respectfully dissent.
            
Southwestern Bell is assessed fees under various municipal ordinances in 
order to compensate the cities enacting them for administering public 
rights-of-way. The company is allowed to pass the fees through to its telephone 
subscribers, but it is prohibited from making a profit from the charge. See, e.g., Brownsville, Tex., Ordinance 95-1296, § 12 (July 
18, 1995). STA provides auditing services of business telephone bills and 
assists its customers in seeking refunds from telephone companies for improper 
billing practices, in exchange for a percentage of the amount its customers 
recover. In the course of auditing Southwestern Bell bills for its customers, 
STA discovered that the company had improperly passed through municipal charges 
for certain services relating to SmartTrunk, Digital 
Loop and Hotel/Motel services. Each of these trademarks describe a service provided by Southwestern Bell to its 
business customers.[1]
            
STA had a number of customers who subscribed to some of these 
Southwestern Bell services.[2] STA and those customers were class 
members in another class action, Mireles v. 
Southwestern Bell Telephone Company, in the 357th District Court of Cameron 
County, which included most of Southwestern Bell’s residential and business 
customers in Texas. When a pending cy pres settlement in Mireles threatened to release the claims of 
its business customers and others similarly situated with no compensation, STA 
informed its customers, who decided to assign their claims to STA. STA then 
carved those claims out of the class settlement, preserving Southwestern Bell’s 
business customers’ claims relating to SmartTrunk, 
Digital Loop and Hotel-Motel municipal charges, which are the subject of this 
class-action suit.
            
After a four-day certification hearing the trial court determined that 
the class satisfied the numerosity, commonality, 
typicality, and adequacy of representation requirements of Rule 42(a) of the 
Texas Rules of Civil Procedure, and that questions of law and fact common to the 
class predominated over individual questions under Rule 42(b)(4). Tex. R. Civ. P. 42(b)(4) (now Rule 42(b)(3)). The trial court also held that STA 
had standing to proceed on behalf of the class and is a proper class 
representative as the owner of its customers’ assigned claims. According to the 
trial court’s findings, there was nothing improper about the methods by which 
STA acquired the assignments, STA has been in the business of auditing 
Southwestern Bell’s and other utilities’ bills for years, STA has knowledge and 
expertise about Southwestern Bell’s billing procedures and information retrieval 
systems which are not common knowledge or widely known to putative class 
members, and STA’s knowledge and expertise give it a 
superior ability to pursue this litigation and supervise the activities of class 
counsel. The trial court also found that STA’s 
interests are aligned with, and not antagonistic to, the putative class members. 
The court of appeals affirmed the trial court’s certification order. 170 S.W.3d 814, 825. It rejected Southwestern Bell’s portent 
of the order opening the floodgates to entrepreneurial abuse in light of the 
trial court’s findings that STA’s assignments came 
from pre-existing customers, those customers had been members of the Mireles class action from which this suit derived, 
and STA did not improperly solicit the assignments. Id. at 
825. The court of appeals, too, rejected Southwestern Bell’s claims that 
STA’s interests conflict with 
or are antagonistic to other class members. Id. at 
826-27. The Court today, however, concludes that STA’s interests conflict with those of the putative class 
such that it cannot be an adequate class representative. The potential conflicts 
the Court hypothesizes, however, are more imagined than real, and in any event 
are insufficiently compelling to disqualify STA from representing the 
class.
            
According to the Court, STA must have a lesser interest in making itself 
and the class whole because it was “never personally aggrieved by Southwestern 
Bell’s alleged overcharging and its maximum recovery is less than half the value 
of any individual claim for damages.”[3] But neither of these circumstances 
creates a conflict. By the assignments, which the Court acknowledges are 
entirely valid, STA stands in the shoes of its customers, whose claims arise 
from the same overbillings that give rise to the other 
class members’ claims. Nor does STA’s smaller financial interest in the litigation affect 
its ability to adequately represent the class. As other courts have noted, the 
amount of a plaintiff's financial interest in the suit is not determinative of 
its ability to represent the class adequately. See, 
e.g., In re Cardizem, 200 F.R.D. 297, 
306 (E.D. Mich. 2001); In re S. Cent. States Bakery Prods., 86 F.R.D. 
407, 418 (M.D. La. 1980). The Court theorizes that since STA never paid the 
overcharges itself, it might have a greater incentive to settle more quickly 
than other class members who paid the charges and might want more. However, any 
incentive STA might have to minimize litigation expenses by settling early 
appears to be no different from that any other class member would have, and 
STA’s incentive to maximize recovery appears to be no 
different either. Though the Court posits that STA might ultimately pursue 
theories of relief more efficient for itself at the expense of absentee class 
members, it does not speculate what those theories might be and none have been 
asserted. Such speculative conflicts are far too tenuous to render STA 
inadequate. The Court apparently believes the fact that STA was not directly 
injured by Southwestern Bell’s conduct and merely holds an economic interest in 
any recovery means that STA has a different set of priorities than other class 
members. But in most, if not all, commercial class actions like this one the 
members of the class are motivated by economic considerations. Here, STA 
represents five class members, and thus, if anything, 
is more cognizant of a greater number of economic interests than the typical 
class representative would be. The evidence demonstrates that the claims 
assigned to STA range from small to large, and supports the trial court’s 
finding that STA has an interest in asserting the rights of all putative class 
members.
            
Southwestern Bell contends STA’s thirty-percent 
interest in recovered funds will make it more likely to disregard a settlement 
paid for in coupons or credits. In support, Southwestern Bell points to an STA 
employee’s testimony at the certification hearing that he was uncertain as to 
whether a coupon settlement would be proper in this case.[4] Coupon settlements, however, have not 
always been favored in our class-action jurisprudence. See, e.g., General Motors Corp. v. Bloyed, 916 S.W.2d 949, 956 (Tex. 1996). A 
general expression of uncertainty on the hypothetical propriety of a future 
coupon settlement does not diminish STA’s adequacy to 
represent the class, especially when non-cash remedies were contemplated in the 
assignments. STA’s assignments allow it to collect its 
percentage from all recovered overcharges, whether recovered through refunds or 
credits. Clearly non-cash remedies have not been ruled out, and the testimony of 
STA’s employee does not indicate otherwise.
            
Southwestern Bell points to the fact that STA does not hold an assignment 
from a customer who subscribed to Hotel/Motel services and thus has no incentive 
to pursue such claims. However, it is highly unlikely that any potential class 
representative would have a claim based on all three types of subscription 
packages. The salient point is that the Hotel/Motel claims arise from the same 
unauthorized course of conduct as the other class claims, and are brought under 
the same statutory scheme with the same legal theories. Southwestern Bell has 
not articulated how the interests or claims of Smart Trunk and Digital Loop 
customers differ from or conflict with those of Hotel/Motel customers. See 
Cardizem, 200 F.R.D. at 
306. As the trial court found, and the court of 
appeals agreed, 170 S.W.3d 814, 827, there is no evidence of any conflict 
between the Hotel/Motel customers and other members of the class. Southwestern 
Bell also contends its right to reallocate charges creates additional potential 
for conflict. Southwestern Bell argues that while it will make a refund to 
customers it overcharged, it has the right to 
reapportion the fee to customers who it essentially undercharged. According to 
Southwestern Bell, STA will have to make strategic decisions knowing some class 
members are affected differently by reallocation.[5] Of course, this complaint is not unique 
to STA and would apply equally to any other purported class representative. In 
response, STA challenges whether this hypothetical reallocation could occur at 
all since Southwestern Bell may only “backbill” a 
customer for the six months prior to when the underbilling is discovered, and that period has passed. 
See 16 Tex. Admin. Code § 26.27(a)(3)(C)(i). But even assuming some 
reallocation would occur, STA presented expert testimony that any reallocation 
would at most cause a minor reduction in the total amount due to a class member, 
and that it is highly unlikely any class member would actually have an increase 
in fees.[6] The expert also pointed to evidence that 
Southwestern Bell collected substantially more from its customers than it paid 
to the municipalities, making it unlikely an increase of fees would result from 
reapportionment, particularly if Southwestern Bell’s overcollection exceeds the amount sought by the class. A 
potential for conflict might exist if it were shown that reallocation would 
result in a significantly reduced damages award for some customers and not 
others. But Southwestern Bell has at most shown that in the case of a 
hypothetical reallocation some customers might have their damages reduced by a 
negligible amount compared to other customers, which is not enough to disqualify 
STA as an adequate class representative.
            
Southwestern Bell also challenges whether STA and its representatives 
have the qualifications, background, and interest to represent the class and 
supervise class counsel, pointing to the testimony of an STA employee, Mike 
Shelton, that “we’re here at the disposal of the 
lawyers.” Tex. R. Civ. P. 
42(a)(4). However, quoted in full, Shelton’s statement 
demonstrates that he is aware of his duty “[t]o vigorously represent the class, 
to put their needs above ours, to – as we’re doing today, we’re here at the 
disposal of the lawyers, at the disposal of the Court to vigorously pursue this 
case and protect the class rights.” Southwestern Bell claims another employee, 
Mark Wilder, lacks familiarity with the surrounding facts and legal theories. 
However, Wilder possesses knowledge and expertise regarding the billing 
procedures at issue in this case, which are not common knowledge nor widely 
known to members of the putative class. The evidence supports the trial court’s 
determination that STA is an appropriate class representative, and the testimony 
of its employees does as well.
            
In sum, the speculative conflicts the Court and Southwestern Bell 
hypothesize between STA and the other class members are too tenuous to render it 
an inadequate class representative. Considering the absence of any realistic 
potential for conflict or antagonism between STA and the class, together with 
STA’s demonstrated superior expertise in the subject 
matter of the litigation, I would hold that STA has satisfied the adequacy 
requirement and affirm certification of the class. Because the Court concludes 
otherwise, I respectfully dissent.
 
                                                                        
___________________________________
                                                                        
Harriet O’Neill
                                                                        
Justice
 
OPINION DELIVERED: February 19, 
2010







[1] The 
Hotel/Motel service allows the hotel or motel to incur charges on a per-call 
basis, thus allowing guests to receive and make local telephone calls charged to 
the room. Digital Loop and Smart Trunk describe an interface that makes a single 
connection with the telephone company that then provides the customer with 
twenty-three channels for telephone communication.

[2] The 
customers are United Services Automobile Association (USAA), S & B 
Engineers, Inc./S & B Engineers and Constructors, 
Ltd., Petrocon Engineering, Inc., Riverway Bank, and Russell & Smith Ford, Inc.

[3] The 
customers assigned 100% of their claims to STA, but as part of the consideration 
for the assignment STA agreed to pay the assignors 70% of any net proceeds 
recovered and retain 30% for itself.

[4] That 
employee testified as follows:
 
Q: “And a coupon settlement would be proper in this case, as to 
what STA should receive for 30 percent interest?”
A: 
“I’m not certain.”

[5] 
Southwestern Bell’s expert offered the following hypothetical example: if 
the municipal fee is $9 million and Southwestern Bell had $100 million in 
revenues, then Southwestern Bell would charge its customers a 9% municipal 
charge to recoup the $9 million fee. A customer with a $100,000 bill would have 
had a $9,000 municipal charge without reallocation. If, however, only $90 
million in revenue was appropriately subject to these charges, Southwestern Bell 
would then have to charge its customers a 10% municipal charge to recoup the $9 
million fee. Under reallocation, if only $99,000 was taxable, then that customer 
would have to pay a $9,900 municipal charge.

[6] For 
example, for USAA, a large customer-assignor, damages with reallocation would be 
$2,560.67 and damages without reallocation would be $2,563.74. For Ridgeway 
Bank, a small customer-assignor, damages with reallocation would be $99.66 and 
damages without reallocation would be 
$102.59.