NO. 07-10-0035-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 23, 2011

_____

AURORA PETROLEUM, INC.,

Appellant

v.

CHOLLA PETROLEUM, INC.,

Appellee

_____

FROM THE 46TH DISTRICT COURT OF HARDEMAN COUNTY;

NO. 10,426; HONORABLE DAN MIKE BIRD, PRESIDING

_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and  CAMPBELL and HANCOCK,  JJ.

This appeal involves a farmout agreement[1] wherein Aurora Petroleum, Inc. (Aurora) and Cholla Petroleum, Inc. (Cholla) agreed that Cholla would drill a test well at a location "mutually acceptable" to both parties.  After Aurora rejected the two drilling sites proposed by Cholla and the deadline to drill lapsed, Aurora demanded the return

_____

[1]A farmout agreement is one in which a lease owner who does not want to drill an oil or gas well assigns the lease or some portion of it to another operator.  The assignor may retain an overriding royalty payment or production payment.  *Young Refining Corp. v. Pennzoil Co.,* 46 S.W.3d 380, 389 (Tex. App.– Houston [1st Dist.] 2001, pet. denied).

of the lease interests it conveyed to Cholla. Yet, it refused to return the $50,000 Cholla paid it as part of the transaction. The question before us is whether the "mutually acceptable" provision rendered the agreement unenforceable as a matter of law. The trial court found that it did and returned the parties to the positions they were in prior to formation of the agreement. It further ordered Aurora to return the $50,000 to Cholla. On appeal, Aurora contends that there was no lack of mutual assent as to any essential term of the contract and it was not unjustly enriched by retaining the $50,000. We disagree, overrule the issues, and affirm the judgment.

*Background*

On November 1, 2006, Aurora and Cholla entered into an "exploration agreement" of the Goodlett Prospect in Hardeman County, Texas. Pursuant to that agreement, Aurora agreed to assign to Cholla its interest in four leases and share with Cholla certain geological and geophysical data. Those leases as well as a fifth specified lease owned by Cholla and any other leases acquired by either party within a designated area constituted an area of mutual interest comprising the prospect. Cholla agreed to pay $50,000 to Aurora and to commence the drilling of a test well on or before January 23, 2008, at a location "mutually acceptable" to both parties. Should Cholla fail to comply with its obligation to timely drill the test well, it was to "reassign to [Aurora], or to its designee, all of [Cholla's] rights, titles and interests in the Leases, this Agreement, and in the Prospect . . . ."

Though Cholla proffered several drilling locations to Aurora, the latter rejected each. Indeed, nothing in the contract obligated Aurora to agree to any location; nor did the contract provide guidance as to how the location would be selected. And, once the

2

deadline to drill lapsed, Aurora demanded the return of the four leases it conveyed to Cholla and at least one other acquired by Cholla from a third party. Cholla reassigned to Aurora the original four leases but refused to assign any others. That resulted in Aurora suing Cholla for specific performance. In turn, Cholla sought to recover the $50,000 it had paid to Aurora after the latter refused to return it.

Both parties filed motions for summary judgment. Cholla sought both a traditional and no-evidence summary judgment on the basis that the agreement was unenforceable as a matter of law because the parties did not agree on an essential term of the contract, *i.e.* the location of the test well, and that Aurora had been unjustly enriched by $50,000. Aurora moved for a traditional summary judgment on the basis that there was no genuine issue of material fact that the agreement was valid and had been breached by Cholla.

*Standard of Review*

We review motions for summary judgment under the standards discussed in *Kimber v. Sideris,* 8 S.W.3d 672, 675 (Tex. App.–Amarillo 1999, no pet.). When both parties move for summary judgment on the same issue and the trial court grants one and denies the other, we may determine all the questions presented and render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005).

*Enforceability of the Contract*

In a nutshell, what we have here is a party who seeks to retain or recover more than it began with simply by invoking contractual provisions that effectively obligated it to do nothing. Admittedly, Aurora was bound to assign to Cholla four leases but those

3

leases could be recovered by Aurora if the latter simply refused to approve any drilling site until the drilling deadline expired. So, not only was it actually free to give up nothing but now it wants to keep the fruits delivered or developed by Cholla.

To be enforceable, the parties must agree to the material terms of the contract. *T. O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992). When an agreement leaves material matters open for future agreement and that agreement never occurs, the contract is not binding on the parties and constitutes merely an agreement to agree. *Playoff Corp. v. Blackwell,* 300 S.W.3d 451, 455 (Tex. App.–Fort Worth 2009, pet. denied). Next, whether a term is material is determined on a case-by-case basis. *T. O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d at 221. And, in making that assessment, we consider whether the uncertainty imposed derails the greater purpose embodied in the agreement. *See Thedford Crossing, L.P. v. Tyler Rose Nursery, Inc.,* 306 S.W.3d 860, 868-69 (Tex. App.–Tyler 2010, pet. filed); *see also Komet v. Graves,* 40 S.W.3d 596, 602 (Tex. App.–San Antonio 2001, no pet.) (determining that a term could be left open without destroying the contract's effectiveness). With this in mind, we turn to the exploration agreement at bar.

The purpose of the agreement was to pool resources to produce oil and gas. Indeed, the continued viability of the agreement was dependent upon Cholla drilling a test well by a time certain at a location on which both parties had to agree. If such a location could not be agreed upon within the pertinent time frame, the contractual arrangement ended. Moreover, Aurora was under no obligation to approve of a drilling site before the drilling deadline. From this, we cannot but conclude that both the time within which Cholla had to drill and the provision regarding the mutual selection of the

4

initial drilling site were material, if not pivotal, to the existence of the accord. Both were more than mere incidental details.[2]  *See R.I.O. Systems, Inc. v. Union Carbide Corp.,* 780 S.W.2d 489, 491-92 (Tex. App.–Corpus Christi 1989, writ denied) (holding that when R.I.O. Systems agreed to purchase a plant at a price based on 10% of the pretax profits associated with the plant's operation and the definition of pretax profits was to be agreed on later by the parties, the missing term was the essence of the contract and not a mere detail); *see also Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846-47 (Tex. 2000) (holding that a letter agreement whereby the city committed that, if it negotiated a new agreement with Southwestern Bell, it would arrive at an appropriate arrangement to distribute revenue to the school district was not enforceable); *Playoff Corp. v. Blackwell,* 300 S.W.3d at 458 (holding an employment agreement unenforceable when there was no agreed method of determining the fair market value of the company and the parties acknowledged that they had no understanding of how it was to be calculated).

Next, Aurora relies upon *Medallion International Corporation v. Sylva,* No. 10-01-00234-CV, 2004 Tex. App. LEXIS 4974 (Tex. App.–Waco June 2, 2004, no pet.) (mem. op.) to support its proposition that there was an enforceable agreement.  In that case, the court relied upon the facts that the consulting and marketing agreement was signed before a notary by two sophisticated businessmen, it included seven clauses setting out the parties' respective obligations including indemnification and cancellation clauses, and the parties had begun performance under the contract. Yet, at bar, we have no

---

[2]Moreover, while we may not rewrite the agreement of the parties, we note that if we find the location of the test well to be a nonessential term, Aurora could earn $50,000, obtain the return of its leases, and possibly obtain additional leases by refusing to agree on a location.

provisions defining or regulating how the parties were to select a drilling site. So, there was nothing by which to gauge the bona fides of Aurora's conduct. That differs from the situation in *Medallion.*

While it is true that there had been some performance by Aurora and Cholla (given the assignment of leases and payment of money), we find that insufficient to render the contract enforceable. Actual exploration for and production of oil and gas could not begin until both parties agreed upon a location for the test well, and Aurora had no obligation to so agree. Without the drilling of a test well, the purpose of the contract would be thwarted. We find as a matter of law that the agreement was unenforceable.

*Unjust Enrichment*

Aurora also argues that Cholla was not entitled to the return of its $50,000 because unjust enrichment is not applicable. Unjust enrichment is an equitable principle that is the result of a failure to make restitution of benefits wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay. *Foley v. Daniel,* No. 08-07-00188-CV, 2009 Tex. App. LEXIS 8028, at *6 (Tex. App.–El Paso October 15, 2009, no pet.); *Walker v. Cotter Props, Inc.,* 181 S.W.3d 895, 900 (Tex. App.–Dallas 2006, no pet.). While it often applies when one person has obtained a benefit from another by fraud, duress, or by taking an undue advantage, *Walker v. Cotter Props, Inc.,* 181 S.W.3d at 900, it is also available if a contract is unenforceable, impossible, not fully performed, or void for other legal reasons. *SCI Texas Funeral Services, Inc. v. Hijar,* 214 S.W.3d 148, 156 (Tex. App.–El Paso 2007, pet. denied); *French v. Moore,* 169 S.W.3d 1, 11 (Tex. App.–Houston [1st

6

Dist.] 2004, no pet.). Indeed, fraud is not a requisite component for a finding of unjust enrichment. *Southwestern Bell Tel. Co. v. Marketing on Hold, Inc.,* 170 S.W.3d 814, 827 (Tex. App.–Corpus Christi 2005), *rev'd on other grounds,* 308 S.W.3d 909 (Tex. 2010).

In preparation for performance under the contract, Aurora assigned its interest in four leases to Cholla[3] and Cholla paid $50,000 to Aurora. We have nevertheless determined that the agreement is unenforceable and Aurora has been reassigned its leases. Under these circumstances, we find it would be inequitable for Aurora to retain the $50,000. Moreover, while Aurora argues that Cholla received the benefit of certain geological and geophysical data under the agreement, there is no summary judgment evidence of that in the record. While we agree that Cholla had the right to that information under the agreement, the nature and extent, if any, of what was actually obtained by Cholla is not before us.

Accordingly, the summary judgment is affirmed.

Per Curiam

---

[3]There is no summary judgment evidence that Aurora ever owned the fifth lease specified in the exploration agreement.

7