McCLOSKEY v. SAN ANTONIO TRACTION CO. (No. 5799.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 7, 1917. Rehearing Denied March 14, 1917.)

1. INJUNCTION ⊂⊃118(3) — PLEADING — CONSTRUCTION.

In a railroad's suit to restrain an alleged barrator from fomenting litigation, neither the allegation that defendant knew nothing of certain claims, nor the allegation that there appeared to be no real basis for claims of liability, could properly be construed to charge that the claims were fraudulent, or that defendant induced claimants to conceal their true character or condition.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 235.]

2. CHAMPERTY AND MAINTENANCE ⊂⊃4(1)— BARRATRY—SOLICITING EMPLOYMENT TO ADJUST CLAIMS—STATUTE.

There is in force in Texas no common law nor statutory law making it unlawful for a person not a licensed attorney to solicit employment as an agent to adjust claims, or to solicit claimants to present claims or to sue upon them; Pen. Code 1911, art. 421, forbidding only attorneys at law to solicit employment in any suit.

[Ed. Note.—For other cases, see Champerty and Maintenance, Cent. Dig. §§ 4, 9, 12, 13.]

3. ASSIGNMENTS ⊂⊃24(2)—CAUSES OF ACTION.

Causes of action, including those for personal injuries, have been commercialized, and can be bartered, sold, and contracted for like personal property, and the common and civil law inhibition to deal in them does not obtain in Texas, so that a transportation company has no legal right to complain of the acts of a third person in hunting up persons injured by the company and soliciting them to sue or assign their claims.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 43.]

4. INJUNCTION ⊂⊃12 — INDUCING PRESENTATION OF CLAIMS.

Injunction cannot issue to restrain one not an attorney at law from inducing the presentation of exaggerated or doubtful claims for personal injuries against a railroad, the court being without jurisdiction, since the court cannot indulge the presumption that trial of suit on such claims will result in unfair loss.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 11, 12.]

5. INJUNCTION ⊂⊃13 — PECUNIARY LOSS—INDUCING PRESENTATION OF CLAIMS.

Costs incident to the preparation and trial of a lawsuit, such as lawyer's fees, loss of time, legitimate expense of collecting testimony, none of which can be recovered even in trial resulting in defendant's favor, do not constitute pecuniary loss or injury to entitle a railroad to enjoin. one not an attorney from inducing injured persons to present exaggerated or doubtful claims.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 13.]

6. INJUNCTION ⊂⊃26(4) — MULTIPLICITY OF SUITS.

The multiplicity of suits that can be enjoined in equity applies only where the numerous suits are based on the same cause of action, or on causes of action that can be legally joined.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 31.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Suit by the San Antonio Traction Company against Frank P. McCloskey. From a temporary restraining order against defendant, he appeals. Judgment reversed, and cause remanded.

R. H. Ward, J. F. Carl, Jno. H. Bickett, Jr., and P. H. Swearingen, Jr., all of San Antonio, for appellant. Templeton, Brooks, Napier & Ogden, of San Antonio, for appellee.

SWEARINGEN, J. The San Antonio Traction Company, appellee, filed this suit against Frank P. McCloskey, appellant, to have him restrained by temporary and permanent injunction from pursuing the business of claim adjuster. The detailed methods by which appellant conducted the business are alleged in appellee's petition. The allegations, relevant to the questions we con-

sider conclusive of this case, are substantially these:

"In the conduct of its [appellee's] said business and in the operation of its said street railway system as is necessarily incident in carrying on such business accidents occur in which passengers on plaintiff's cars and travelers on the streets are involved; that said accidents may, and frequently do, result in claims of injury to the persons involved; that many claims for injuries sustained in such accidents, and for alleged injuries sustained in alleged accidents, are presented against plaintiff [appellee], and many suits for such damages are filed against plaintiff [appellee] on account of such injuries and alleged injuries; that the costs and expenses to plaintiff of investigating, handling, settling, and defending such claims and suits is approximately * * * $1,000,000 per annum; that the said costs and expenses are greatly, unnecessarily, wrongfully, and unlawfully increased by the acts and practices of defendant [appellant] as hereinafter set out." The pro rata of the $1,000,000 above mentioned, incurred by reason of the practices of appellant, it is alleged, will be in excess of ten thousand dollars unless appellant is restrained. Appellant's business is that of a common barrator soliciting and stirring up claims and suits for unliquidated damages for personal injuries against appellee, soliciting and stirring up vexatious and speculative litigation based on such claims. Appellant "maintains offices and employs a large number of agents to handle his office and field work. He advertises and holds himself out as an adjuster of claims for unliquidated damages for personal injuries. He and his agents make it their business to look out for the happening of accidents that may serve as the basis of such claims for damages, hunt up and get in touch with possible and prospective claimants, and solicit such claimants to make and urge claims for damages on account of such accidents and to enter into contracts with defendant [appellant], employing him to take charge of and handle their claims. He secures and obtains a great many such contracts, usually by the means stated. Such contracts generally, if not invariably, transfer and assign to him an interest in the alleged * * * cause of action as a consideration for his services; such interest transferred and assigned being usually for one-third or one-half of such * * * cause of action. Upon obtaining such contract, he gives notice to the party against whom such claim is made that he holds such contract and has such transfer and assignment, * * * which makes it impossible for such party to deal directly with the claimant, and settle the claim upon terms satisfactory to such party and claimant, and makes it necessary for such party to deal with defendant [appellant], and to settle the claim upon terms satisfactory to defendant [appellant] or let the claim go to suit. * * * By the means aforesaid * * * [appellant] causes and procures a great number of such claims to be presented against plaintiff [appellee] * * * that otherwise would never be presented or urged. Many of such claims so presented are * * * claims concerning which plaintiff [appellee] * * * knows nothing and can learn nothing; in a great many of them the injuries claimed to have been sustained are grossly exaggerated; in many of them there appears to be no real basis of the claim of liability. * * * In cases where [appellee] refuses to settle on [appellant's] terms, he employs or causes attorneys to be employed to bring suit thereon." The appellant "usually * * * agrees to become responsible for the costs and expenses of the litigation, and frequently advances money for that purpose. * * * He sometimes advances money to the claimant to induce him to make such claim and to give such contracts to [appellant], and he generally makes advances in monthly or weekly installments to the claimant pending the settlement of the claim."

And appellee closed his petition with the prayer that appellant be notified to appear and show cause why a writ of injunction should not be granted, restraining him from each and all of the acts and practices herein above set out. Appellant's answer consisted of a general demurrer, several special exceptions, a general denial, and special admissions. After hearing the evidence, the court made the following order:

"It is therefore ordered, adjudged, and decreed by the court that the clerk of this court be and he is hereby directed, on the filing by the plaintiff of a bond herein in the sum of $5,000, conditioned and payable as required by law, to issue a writ of injunction against the defendant, F. P. McCloskey, enjoining and restraining him, his agents, servants, and employés, during the pendency of this suit, from soliciting, inciting, or inducing, or attempting to induce, any person or persons to present claims or bring suits for unliquidated damages against the plaintiff, and from soliciting, inciting, or inducing any person or persons to turn over their claims for such damages to him, or to employ him in connection therewith, and from soliciting, inciting, or inducing any person or persons to present exaggerated or fraudulent claims for such damages against the plaintiff, or to conceal the true character or nature of their condition, and from buying or offering to buy any such claim from any person or persons unsolicited by such person, and from offering any money or other thing of value to any person as an inducement to such person to employ him to represent such person in such claim or suit against plaintiff, unless such person shall first go to defendant and request him to represent him in such claim or suit, and from interfering with settlements between plaintiff and persons having claims against it, and from attempting to prevent such person or persons from making settlement with plaintiff."

From this temporary restraining order this appeal is taken.

The evidence introduced at the hearing is fairly summarized by the trial judge in his terse, lucid, and able opinion, as follows:

"The testimony offered by the plaintiff tends strongly to establish the material allegations in the plaintiff's petition. It appears that about 60 per cent. of all the claims presented against the plaintiff are presented by the defendant. A large number of witnesses testified that they had received slight injuries, or been on cars which were derailed, in which they received practically no injuries; that they were not acquainted with the defendant or his agents, and that almost immediately after such accidents the defendant or his agents approached them and solicited his employment by the claimants, urging them to present claims against the plaintiff for large damages, and that, if they would give him the claims to handle, he could obtain large sums of money for them, and urging them to exaggerate their injuries, to remain in bed as long as they could endure it, and when they went out insisted upon their using crutches when not necessary, and by various means trying to induce them to assist him in obtaining large sums of money from the plaintiffs, in many instances paying them a considerable sum of money in advance for the purpose of securing contracts of employment from them, and in some instances calling in a doctor to advise the claimants that they

were seriously and permanently injured, when in truth and in fact they were only slightly injured, or not injured at all; that a great number of suits for hundreds of thousands of dollars were filed by attorneys employed by the defendant on claims presented by the defendant, and that the defendant is still continuing said business, one claim having been presented during the hearing of this application, and that he proposes to so continue the same. Although the defendant and his principal agent and assistant were present in court during the hearing of this application and heard the testimony of these witnesses, in which they were charged with the things hereinabove stated, they did not take the stand to deny or refute the testimony of these witnesses."

The controlling question presented for our determination is this: Do the allegations in appellee's petition authorize an injunction?

[1] We will say, incidentally, that the order made by the court was probably not in all respects supported by appellee's pleading. For example: The order restrains appellant from soliciting, inciting, or inducing any person * * * to present * * * fraudulent claims, * * * or to conceal the true character or nature of their condition. The only allegation in the petition that might have been construed to support the last-stated portion of the order is this:

"Many of such claims so presented are what is known as 'blind claims'; that is, claims concerning which plaintiff [appellee] knows nothing and can learn nothing; * * * in a great many of them there appears to be no real basis of the claim of liability."

Neither the allegation that appellee knows nothing of the claim, nor the allegation that there appears to be no real basis of the claim of liability, can be properly construed to charge that the claims are fraudulent, or that appellee induces the claimants to conceal the true character or nature of their condition.

To return to the main question, the sufficiency of appellee's petition: It is apparent that the allegations therein are correctly propounded upon the hypothesis that the alleged acts or system of business of appellant are in violation of law, and that there is imminent danger that appellee will be injured thereby. The main question naturally falls into two parts: What law is violated? and what is the injury? Counsel for appellee, in their most interesting and instructive brief, contend that the law violated is that of public policy as defined in the English statutes of barratry, champerty, and maintenance, which statutes themselves were merely declaratory of the prior prevailing common law. Appellee's counsel concede that the common-law definition has been modified by the Texas Penal Code by adding a new article in 1876 (Acts 15th Leg. c. 135), and by article 421 of the Penal Code now in force. They further admit in their brief that the acts alleged in their petition are not sufficient in themselves to indict or convict appellant of the offense of barratry, maintenance, and champerty as defined by the Texas Penal

Code. But counsel insist that the common law made it unlawful to solicit claims, to render aid where there was no interest, to institute fraudulent claims, and to acquire a contingent interest in causes of action, because contrary to public policy; and counsel argue that to this extent the common law prevails in Texas, and will give jurisdiction to a court of equity to enjoin the acts condemned by the common law, provided special injury is alleged and proven to the petitioner.

Mr. Chief Justice Brown, in his splendid sermon on the marriage status, reported in Grigsby v. Reib, 105 Tex. 600, 153 S. W. 1125, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011, says:

"The effect of the act of 1840 * * * was not to introduce and put into effect the body of the common law, but to make effective the provisions of the common law so far as they are not inconsistent with the conditions and circumstances of our people."

The statute itself (article 5492) adopts the common law only in so far as it is not inconsistent with the laws of this state, or until altered or repealed by the Legislature. The question whether or not the common law against champerty and maintenance was a part of our civil law in 1873 was ably discussed by those great lawyers of counsel in the case of Bentinck v. Franklin, 38 Tex. 458. The Supreme Court in that case determined that at that time there was no law prohibiting champerty in this state. Again, our Supreme Court, in the case of Stewart v. Railway, 62 Tex. 246, held that the common-law doctrine of champerty and maintenance was not in force in this state. Again, in the case of Wheeler v. Riviere, 49 S. W. 697, Chief Justice Pleasants made a similar holding. To the same effect is the opinion in the case of G., H. & S. A. Ry. v. Ginther, 96 Tex. 295, 72 S. W. 166.

Inasmuch as the common law of barratry, maintenance, and champerty was defined by an English statute, it may present a more definite idea of this ubiquitous common law to here quote the statute itself as given by Mr. Blackstone:

"Common barratry is the offense of frequently exciting and stirring up suits and quarrels between his majesty's subjects, either at law or otherwise." Though to be a barrator one must not sue in his own right according to note 13, vol. IV, page 134. The punishment for this offense * * * is by fine and imprisonment.

"Maintenance is an offense that bears a near relation to the former, being an officious intermeddling in a suit that no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it. * * * This is an offense against public justice, as it keeps alive strife and contention. * * * And therefore, by the Roman law, it was a species of the crimen falsi to enter into any confederacy, or do any act to support another's lawsuit, by money, witnesses, or patronage. A man may, however, maintain the suit of his near kinsman, servant, or poor neighbor out of charity and compassion."

"Champerty, campi-partitio, is a species of maintenance and punished in the same manner, being a bargain with a plaintiff or defendant, campum partire to divide the land or other mat-

ter sued for between them, if they prevail at law, whereupon the champerter is to carry on the party's suit at his own expense. * * * It signifies the purchasing of a suit or right of suing, a practice so much abhorred by our law, that it is one main reason why a chose in action, or thing of which one hath the right, but not the possession, is not assignable at common law." 4 Cooley's Blackstone, 134 et seq.

As shown above, this English law probably never was in force in Texas. Prior to 1876 there was no barratry statute in Texas, but in that year the Legislature passed a criminal statute (Acts 15th Leg. c. 135) which in substance made it unlawful for any person to willfully instigate, maintain, excite, prosecute, or encourage the bringing of any suit at law or equity in any court of this state in which such person has no interest, with the intent to distress or harass the defendant therein, or shall willfully bring or present any false suit at law or equity of his own with intent to distress or harass the defendant therein. The above statute remained in our Penal Code until 1901, when the Legislature amended said act (Acts 27th Leg. c. 57), stating in the caption that the amendment was made "so as to include the fomenting of litigation by attorneys at law by soliciting employment or advancing money * * * to the parties to litigations in order to procure employment." The statute as amended is article 421 of our Penal Code:

"If any person shall willfully instigate, maintain, excite, prosecute or encourage the bringing of any suit or suits at law or equity in any court of this state in which such person has no interest, with the intent to distress or harass the defendant therein, or shall willfully bring or prosecute any false suit or suits at law or equity, of his own, with the intent to distress or harass the defendant therein, or, if any attorney at law shall seek or obtain employment in any suit or case at law, or in equity, to prosecute or defend the same by means of personal solicitation of such employment, or by procuring another to solicit for him employment in such cause, or who shall, by himself or another, seek or obtain such employment by giving to the person from whom the employment is sought money or other thing of value, or who shall, directly or indirectly, pay the debts or liabilities of the person from whom such employment is sought, or who shall loan or promise to give, loan or otherwise grant money or other valuable thing to the person from whom such employment is sought, before such employment, in order to induce such employment, whether the same shall be done directly by him or through another, shall be deemed guilty of barratry, and shall, upon conviction, be punished by fine in any sum not to exceed five hundred dollars, and may in addition thereto be imprisoned in the county jail not exceeding three months. The term 'attorney at law' shall include counselor at law; and any attorney at law, violating any of the provisions of this law, shall, in addition to the penalty hereinbefore provided, forfeit his right to practice law in this state, and shall be subject to have his license revoked and be disbarred in the manner provided by law for dishonorable conduct or malpractice, whether he has been convicted for violating this law or not."

[2] From the foregoing we conclude that the Texas law defining barratry, etc., is not an indefinite idea of the common law of England, but an exactly framed statute, which accurately defines the law of barratry, maintenance, and champerty. It is clear that only an attorney at law is forbidden to solicit employment in any suit himself or by an agent. Why the Legislature left it lawful for a layman to do with impunity those things, which it made unlawful to be done by an attorney at law, we are not called upon to explain. It may be the Legislature did not anticipate that a layman would develop a large and lucrative business of speculation and peculation, as Judge Gould expressed it in the brief in the Bentinck Case, dealing with the accidents of transportation companies. We find that there is not in force in this state any common law nor statutory law that makes it unlawful for a person, who is not a licensed attorney, to solicit employment as agent to adjust claims, nor to solicit claimants to present claims or sue upon them.

[3] One of the practices anciently considered contrary to public policy and most severely condemned by both the civil and common law was the buying of causes of action. By the decisions of our Supreme Court and legislative acts causes of action are commercialized, and can be bartered, sold, and contracted for like personal property. As early as 1840 all rights and interests in property, and all rights of causes of action for tort connected with or growing out of property or contracts, were assignable. The test of the assignability was whether or not the claim would pass as an asset to the legal representative of the assignor at his death. Railway v. Freeman, 57 Tex. 156; Stewart v. Railway, 62 Tex. 246; Jones v. Matthews, 75 Tex. 3, 12 S. W. 823. Thus the first change was the assignability of a cause of action for tort, and it was limited to torts connected with contracts or land. The common-law rule, that the right of action for injuries to the person, or on account of torts unconnected with contracts or property, died with the person, prevailed in Texas until 1895, and prior to which date such causes of action could not be assigned.

Article 5686 was passed in 1895, and provides substantially, that suits for such injuries shall not abate by reason of the death of the injured person, but shall survive in favor of the heirs and legal representatives of the injured party. Since the enactment of article 5686 it has been held that such causes of action are assignable. Railway v. Ginther, 96 Tex. 295, 72 S. W. 166; Railway v. Ellyson, 43 Tex. Civ. App. 45, 94 S. W. 910; Railway v. Stubbs, 166 S. W. 699; Railway v. Vaughan, 16 Tex. Civ. App. 403, 40 S. W. 1065; Wheeler v. Riviere, 49 S. W. 697. In the meantime the Legislature, in 1889, had enacted article 6833, which provided that the sale of any cause of action or interest therein after suit had been filed should be evidenced by written transfer filed among the papers of the cause, and that said article

should apply to all suits, claims, and causes of action, whether assignable in law and equity, or not. This statute is one of notice, and is also legislative recognition of the right to barter and sell interests in personal injury suits. Railway v. Wooten, 10 Tex. Civ. App. 54, 30 S. W. 684.

From the foregoing, there can be no doubt that causes of action for personal injuries are property subject to sale, barter, contract, or gift as any other property, and that the common and civil law inhibition and condemnation of dealing in causes of action is obsolete in Texas. Since a claimant has the right to assign all or any part of his cause of action, and all persons have the right to buy or acquire the same or any part thereof, it is not unlawful for the appellant to acquire an interest in any claim or claims. How appellant acquires them, whether by hunting for them and soliciting them, or having them first presented to him, is a question that appellee has no legal right to inquire into, nor to regulate. The consideration paid by appellant for his interest in the cause of action is a matter that concerns only the parties to the contract concerning the cause of action, and appellee has no lawful right to change, prevent, or in any way regulate the same.

After appellant thus lawfully acquires an interest in the claim, he has a lawful right to require appellee to make a settlement satisfactory to him. The settlement of the cause of action cannot by law be confined to appellee, and the original claimant for appellant has lawfully acquired whatever right the original claimant had in proportion to the interest acquired. This discussion leads to the conclusion that appellant, who it was alleged was not a lawyer, would violate no law by doing any of the acts or things from which he was restrained by the trial court's order, unless it be inciting persons to present exaggerated claims, or claims about which appellee knew nothing, or claims of which there appeared to be no basis of liability.

[4] As will be observed, the foregoing is an examination of the first part of the hypothesis of appellee's petition, viz., that appellant violated the law. We will now consider the second part; that is, it will not be sufficient to allege the violation of an abstract principle of law, but in order to confer jurisdiction upon the court to grant an injunction the petition must also allege that the petitioner is in imminent danger of suffering some injury by reason of the alleged violation of the law. Chambers v. Gallup, 30 Tex. Civ. App. 424, 70 S. W. 1009. The petition before us alleges no facts which in law can be construed to mean will endanger appellee's property or force a financial loss. All that can be fairly deduced from the petition upon this issue is that appellant will, as he has been doing, induce the presentation of exaggerated or doubtful claims for payment, and, if not paid when presented, suit will be filed in the court to enforce payment. The courts have no jurisdiction to enjoin the presentation of claims by claimants, though the claims are unjust, and more certainly have no authority to enjoin appellant from inducing the claimant to present such claims.

But it is alleged that, if appellee refuses settlement upon presentation, appellant will cause suit to be filed to enforce payment of the claim. We cannot for a moment indulge the presumption that a trial of the cause will result in an unfair loss to appellee. On the contrary, it must and will be presumed that a trial will result in exact justice being meted out to all parties to the suit. A threat to sue is not coercion, force, or violence, not vi et armis, but an offer of a fair and equitable settlement. No one can be deprived of his rights to resort to the courts for the adjudication of his claim by a writ of injunction.

[5] The costs incident to the preparation and trial of a lawsuit, such as lawyers' fees, loss of time, legitimate expense of collecting testimony, none of which can be recovered, even in a trial resulting in appellee's favor, do not constitute pecuniary loss or injury. Salado College v. Davis, 47 Tex. 135; Sedgwick on Damages, 38; King v. Sullivan, 92 S. W. 52; Vance v. Lindsey, 60 Tex. 290–291; Mutual Life Ins. Co. v. Hargus, 99 S. W. 580; Smith v. Adams, 27 Tex. 30.

[6] The fact alleged, that appellant will bring a multiplicity of suits, cannot be intended to warrant an injunction in the case at bar, for it is well known to counsel that the multiplicity that can be enjoined applies only where the numerous suits are based upon the same cause of action, or causes of action that can be legally joined in one suit. The claims alleged in appellee's petition are each distinct causes of action. We can understand, from the extent and nature of appellant's business shown by the record before us, that the insufficiency of our law upon the subject may cause appellee to suffer most unjust and expensive wrongs, for which there is now no remedy. But courts can only apply the law, and cannot make it, even under the beneficent power of equity.

The judgment is reversed, and the cause remanded.