NUMBER 13-03-287-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

SOUTHWESTERN BELL TELEPHONE COMPANY,            Appellant,

 

                                           v.

 

MARKETING ON HOLD, INC. D/B/A 

SOUTHWEST TARIFF ANALYST,                                  Appellee.

 

 

 

                  On appeal from the 138th
District Court

                          of Cameron
County, Texas.

 

 

 

                              O P I N I O N

 

                 Before Justices Yanez, Castillo
and Garza

                           Opinion by Justice Castillo

 








This interlocutory
appeal is brought, pursuant to Texas Civil Practice and Remedies Code section ' 51.014(a)(3),[1]
from the trial court's order of May 6, 2003, certifying a class.  We affirm.

I.  Background

The underlying class
action is brought on behalf of customers of Southwestern Bell Telephone, L.P.
("Southwestern Bell") for improper pass-through and collection of
certain fees.  The fees are initially
assessed against Southwestern Bell under various city ordinances to compensate
the cities for costs of administering public rights-of-way.  The ordinances recognize Southwestern Bell's
authority to pass the fees through to its telephone subscribers, but provide
that Southwestern Bell is neither to profit nor to sustain any loss
therefrom.  The class charges that some
fees were improperly "passed through" or charged to subscribers of
certain services, specifically SmartTrunk, Digital Loop, and Hotel/Motel
measured service (all designed for different classes of business
customers).  








Marketing on Hold,
Inc., d/b/a Southwestern Tariff Analyst ("STA") is a company that
audits its customers' telephone bills and represents them in seeking refunds
from the service provider.  In the course
of those audits, STA discovered the improper charges.  Some of STA's customers assigned their claims
to STA,[2]
and STA then brought the underlying suit in its own name, seeking to be
identified as class representative for nearly 7,000 customers.[3]  STA itself was never a subscriber to the
services in issue and never paid any of the disputed fees.  

The trial court held a
four-day hearing on the issue of class certification.  All parties were represented at the hearing
and significant volumes of evidence were introduced and reviewed.  The parties were given the opportunity to
file additional and supplemental briefs, which the trial court reviewed and
considered.  The court issued a 28-page
order on May 6, 2003, certifying the class. 
The class was defined to include subscribers to the services identified
above, who "made payment(s) to Southwestern Bell . . . ."  The trial court found that the requisites of
rule 42(a), numerosity, commonality, typicality and adequacy of representation,
were satisfied.  Tex. R. Civ. P. 42(a). 
Extensive discussion in the order is directed to the suitability of STA
as a class representative.  The court
found STA to be a proper representative by virtue of its ownership of the
assigned claims.[4]  The court found no conflicts of interest
between the representative and the class, or between sub-classes. 








The court also
reviewed evidence and found that, under rule 42(b)(4) (Tex. R. Civ. P. 42(b)), questions of law and fact common to
the members of the class predominated over any questions affecting only
individual members, and that the class action was superior to other available
methods to adjudicate the controversy. 
The trial court noted damages derived solely from economic injury, and
found that evidence of those damages is susceptible to class-wide proof because
billing practices of Southwestern Bell are consistent from customer to
customer.  The trial court further noted:

Plaintiff [STA] is not
seeking either consequential damages or punitive damages but is seeking
economic damages in the form of a refund of the alleged overcharge.  The collection of an overcharge, if any, can
be determined by reference to the billing records . . . 

 








With respect to the
claim of unjust enrichment, the trial court observed that a party must
demonstrate that another obtained a benefit through fraud, duress or the taking
of an undue advantage, but that plaintiff did not allege any fraud or duress.  Therefore, the question of the taking of an
undue advantage is a common issue which can be answered the same for all
members of the class.  The trial court
also addressed the claim of breach of express warranty, finding that (1) Southwestern
Bell presents its bills for services in substantially the same form to all its
customers, including class members; (2) each bill contains a separate charge
for municipal charges; (3) the bills, on their face, constitute representations
that the bills are true and accurate; and (4) no independent inquiry is
required into what representations were relied upon by each class member
because the representation is uniform to all members of the class.[5]  The trial court proceeded to review in detail
its rationale for concluding that class certification was proper in the face of
the challenges raised in this appeal.  

II.  Issues on Appeal

Southwestern Bell
urges that the certification of the class was improper because the
prerequisites of rule 42 of the Texas Rules of Civil Procedure have not been
satisfied.  Southwestern Bell (1)
challenges the class representative's standing as well as its ability to
adequately represent the class; (2) challenges the predominance of common questions
where (a) causes of action include the element of reliance, and (b) assessment
of damages will require individualized review of customer bills and other
records; and (3) contends that inherent conflicts of interest exist between (a)
the class representative and class members, and (b) sub-groups of the class.

III. Standard of
Review








Our review of an
interlocutory appeal from a class certification order is limited to determining
whether the trial court's order constituted an abuse of discretion.  Ford Motor Co. v. Ocanas, 138
S.W.3d 447, 451 (Tex. App.BCorpus Christi 2004,
no pet.); see also Henry Schein,
Inc. v. Stromboe, 102 S.W.3d 675, 690‑91 (Tex. 2002).  In reviewing a trial court's decision under
an abuse of discretion standard, we must determine whether the trial court
acted without reference to any guiding rules or principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985).  The
exercise of discretion is within the sole province of the trial court, and an
appellate court may not substitute its discretion for that of the trial
judge.  Johnson v. Fourth Ct. App.,
700 S.W.2d 916, 918 (Tex. 1985).  Rather,
an abuse of discretion occurs only when the trial court reaches a decision that
is "so arbitrary and unreasonable as to amount to a clear and prejudicial
error of law."  Id. at
917. 

Although we discuss
the propriety of the class certification in light of the claims asserted by the
named plaintiffs, we in no way evaluate the merits of these claims.  See Intratex Gas Co. v. Beeson, 22 S.W.3d
398, 404 (Tex. 2000) ("Deciding the merits of the suit in order to
determine its maintainability as a class action is not appropriate.").

The trial court must
conduct a "rigorous analysis" to determine whether certification
requirements have been met.  Southwestern
Ref. Co. v. Bernal, 22 S.W.3d 425, 435 (Tex. 2000).  This rigorous analysis includes indicating
how the claims will likely be tried so that conformity with rule 42 can be
meaningfully evaluated.  Schein,
102 S.W.3d at 690.  Courts are to
"go beyond the pleadings" and understand the "claims, defenses,
relevant facts, and applicable substantive law" when determining whether
the requirements of certification should be met.  Bernal, 22 S.W.3d at 435.  








Typically, under this
standard of review, the appellate court must indulge every presumption
favorable to the trial court's ruling.  Fidelity
and Guar. Life Ins. Co. v. Pina, 2005 Tex. App. LEXIS 3198, at *13 (Tex.
App.BCorpus Christi April
28, 2005, no pet. h.)[6]
(citing Graebel/Houston Movers, Inc. v. Chastain, 26 S.W.3d 24, 29 (Tex.
App.BHouston [1st Dist.]
2000, pet dism'd w.o.j.)).  On
certification issues, however, the appellate court is not bound by this
presumption and must independently determine whether the requirements of rule
42 have been fully satisfied.  Pina, 2005
Tex. App. LEXIS 3198, at *13; Ocanas, 138 S.W.3d at 451; see also
Schein, 102 S.W.3d at 691; Bernal, 22 S.W.3d at 435 (determining
that actual compliance with rule 42 "must be demonstrated; it cannot be
presumed"). 

IV.  Rule 42

Under rule 42(a),
every class action must satisfy four threshold requirements: numerosity,
commonality, typicality, and adequacy of representation.  See Tex.
R. Civ. P. 42(a).  In addition, a
proposed class action must also satisfy at least one of the subparts of rule
42(b).  See Tex. R. Civ. P. 42(b). The trial court
certified the class under rule 42(b)(4),[7]
which permits class actions to be maintained when common questions of law or
fact predominate and a class action is superior to other forms of
adjudication.  See id. 

 








V.  Analysis

After reviewing the
record, we conclude that the trial court conducted the requisite "rigorous
analysis," demonstrated in the detailed order which included its findings
of fact and conclusions of law.  We now
review the challenged issues, applying the abuse of discretion standard, to
independently determine whether the requirements of rule 42 have been fully
satisfied, i.e., demonstrated and not presumed.  See Ocanas, 138 S.W.3d at 451; see
also Schein, 102 S.W.3d at 691; Bernal, 22 S.W.3d at 435. 

A.  The Class Representative

Southwestern Bell
challenges the typicality of STA as class representative, and its standing to
represent the class.  STA acquired
ownership of causes of action by virtue of assignments and is not, independent
of those assignments, a member of the class.[8]  The assignments are from businesses falling
within two of the three sub-classes, and pre-date the commencement of this
litigation.  








Southwestern Bell
contends that (1) STA lacks standing because it is not, independent of the
assignments, a member of the class and has sustained no class injury; (2) the
assignments are (a) void under the municipal ordinances permitting the
pass-through of charges, (b) unenforceable under section 12.014(a) of the Texas
Property Code (Tex. Prop. Code Ann.
' 12.014(a) (Vernon
2004)), and (c) void as against public policy. 
Southwestern Bell also challenges the adequacy of representation by STA,
in light of asserted conflicts of interest. 


1.  Typicality or Standing

Typicality requires
that "the claims or defenses of the representative parties are typical of
the claims or defenses of the class." 
Bernal, 22 S.W.3d at 433. 
A class representative must possess the same interests and suffer the
same injury as unnamed or absent class members. 
Gen. Tel. Co. v. Falcon, 457 U.S. 147, 156 (1982); State Farm
Mut. Auto Ins. Co. v. Lopez, 45 S.W.3d 182, 191 (Tex. App.BCorpus Christi 2001), rev'd
on other grounds, 156 S.W.3d 550 (Tex. 2004).  To be typical, class representatives' claims
need not be identical, but must arise from the same event or course of conduct
giving rise to the claims of other class members and must also be based on the
same legal theories.  Weatherly v.
Deloitte & Touche, 905 S.W.2d 642, 653 (Tex. App.BHouston [14th Dist.]
1995, writ dism'd w.o.j.).  Other courts
have described this as a requisite "nexus between the injury suffered by
the representative and the injuries suffered by other members of the class."  Dresser Indus., Inc. v. Snell, 847
S.W.2d 367, 372 (Tex. App.BEl Paso 1993, no
writ).  








Southwestern Bell
argues that STA's status is not only atypical, but that STA lacks standing,
inasmuch as STA was never a member of the class in its own right, and thus
never sustained any of the injuries for which the suit is brought.  STA counters that, by virtue of the
assignments, it "stands in the shoes" of the assignors and has every
entitlement to pursue the interests it now owns.  

The court, in State
Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 705-08 (Tex. 1996),
extensively explored the assignability of causes of action.  While causes of action may be generally
assignable, with notable exceptions,[9]
the Gandy court nevertheless observed:

Practicalities of the
modern world have made free alienation of choses in action the general rule,
but they have not entirely dispelled the common law's reservations to
alienability, or displaced the role of equity or policy in shaping the rule.  Even today, the general rule is that a
contractual assignment may be "inoperative on grounds of public
policy." 

 

Gandy, 925 S.W.2d at 707
(citing Restatement (Second) of
Contracts ' 317(2)(b)
(1981).  The Gandy court, noting
that the Restatement identifies numerous limitations on alienation of choses in
action, continued:  

The increase in
litigation caused by assignments remains a matter of concern.  So does the effect of alienability on the
parties and circumstances in the original transaction or occurrence.  As Holmes succinctly summarized, "the
history of early law everywhere shows that the difficulty of transferring a
mere right was greatly felt when the situation of fact from which it sprung
could not also be transferred.  Analysis
shows that the difficulty is real." 


 

Id. (citing Oliver W.
Holmes, Jr., The Common Law 340,
409 (Boston; Little, Brown, and Company 1881)). 









Texas courts recognize
that many causes of action are property rights which may be assigned.  Pineda v. PMI Mortgage Ins. Co., 843
S.W.2d 660, 675 (Tex. App.BCorpus Christi 1992,
writ denied).  However, assignability as
a general proposition is not in contention with respect to this issue as raised
by Southwestern Bell.  Rather, it is the
ability of the assignee STA to represent an entire class in an action where it
has not personally sustained any injury, and in which it would not participate
at all but for the assignments. 

STA cites to federal
cases from Indiana, Michigan, and various other jurisdictions for the
proposition that an assignee may properly stand in the shoes of the assignor
and represent the interests of the class.[10]  

We note that
application of Texas Rule of Civil Procedure 42, dealing with class actions,
has been modeled after Federal Rule of Procedure 23, and "federal
decisions and authorities interpreting current federal class action
requirements are persuasive in Texas actions."  Ford Motor Co. v. Sheldon, 22 S.W.3d 444,
452 (Tex. 2000).  STA directs us to
several federal cases which support that an assignee may serve as a class
representative.  








          McDaniel
v. N. Am. Indemnity, 2003 U.S. Dist. LEXIS 1663 (S.D. Ind. Feb. 7, 2003) involved
a class action brought by participants or beneficiaries of welfare benefit
plans.  Id. at *2-*3.  Claims included breach of fiduciary duties
and other ERISA violations.  Id.
at *5.  Pedcor, one of the identified
class representatives and an assignee of claims for benefits, brought the same
claims as other members of the 
class.  Id. at
*10-*11.  "Each of Plaintiffs'
claims arises from Defendants' alleged course of conduct toward the class, and
each of Plaintiffs' claims is based upon the same legal theory as the class
members.  Plaintiffs' claims are typical
of the class, and the typicality requirement of Rule 23(a) is
satisfied."  Id. at *11.  The court found no problem with Pedcor
serving as a class representative, despite argument that it was not typical by
virtue of the assignments.  Id. at
*10-*11.

In re Cardizem CD
Antitrust Litigation, 200 F.R.D. 297 (E.D. Mich. 2001) dealt with antitrust claims under
the Sherman Antitrust Act.  Id. at
300.  Plaintiffs seeking certification of
the class were either direct purchasers, or their assignees.  Id. 
The court focused not on the characteristics of the class
representative, but on the claims asserted to assess typicality:  

Typicality refers to
the nature of the claims of the representative, not the individual
characteristics of the plaintiff. . . . 
As one court noted: 'there is nothing in Rule 23(a)(3) which requires
named plaintiffs to be clones of each other or clones of other class members.'

 

*        *        *

 

The assignment issue
Defendants raise presents a question of law that can readily be resolved by the
Court without skewing the focus of the litigation or creating a significant
danger of distracting [the identified class representative's] ability to pursue
the interests of the absent class members. 
Contrary to Defendants' arguments, it does not present a unique defense
that will consume the merits of this litigation. 

 








Id., 200 F.R.D. at 304-05
(citations omitted).  Because the class
representative stood in the shoes of the absent class members, and its claims
arose from the same agreement that gave rise to the other class members' claims,
Id. at 305, typicality was satisfied and the class was certified.[11]  

In Hobbs v. Blue
Cross Blue Shield of Alabama, 276 F.3d 1236 (11th Cir. 2001), physicians'
assistants brought state insurance violation claims for failure to pay for
services.  Id. at 1239.  The matter was transferred to federal court
under the ERISA preemption provisions, Id. at 1239-40, where it was
contended that preemption did not apply because this was not an ERISA claimBthe physicians
assistants lacked standing to proceed under ERISA as they were not participants
or beneficiaries of an employee health benefit plan.  Id. at 1240.  The eleventh circuit noted it had previously
held that nothing in the federal statutes prohibited the assignment of these
types of rights, which provided a plaintiff with derivative standing.  Id. at 1241.  However, in Hobbs, the court faced a
situation which was the opposite of the situation presented here:  because there was no evidence of assignments
to the physicians assistants, the class action could not proceed.  Id. at 1241. 








We conclude that the
result reached in Hobbs does not support an argument that assignees may
not act as class representatives.  Id.  As the courts did in these federal class
actions, we have focused on the nature of the claims brought, rather than the
characteristics of the class representative. 
In light of the deference we accord to the trial court's "rigorous
analysis" and decision, and in light of our own analysis, we are in accord
with the trial court that (1) the claims brought are typical and substantially
similar to claims advanced on behalf of all class members, and (2) STA has
standing, by virtue of the assignments, to bring those claims.[12]


2.  Applicability of the Ordinances to the Class
Representative

Southwestern Bell
contends that language contained in the municipal ordinances, which authorize
Southwestern Bell's pass-through of the various fees to its customers,
invalidates the assignments to STA. 
Language in the ordinance included in the record, tendered as typical of
the various applicable ordinances, provides: 
"This Ordinance and any rights or privileges hereunder shall not be
assignable to any other entity without the express consent of the
CITY."  Southwestern Bell argues
that because the class members' claims derive from and depend on the criteria
in each ordinance, the assignments are barred by those ordinances.[13]  

The pleadings allege
that Southwestern Bell has improperly "passed-through" various
charges to its customers.  We reject the
contention that a customer's right to challenge the methodology applied in
implementing the "pass-through" is derivative of the contract or
ordinance limiting the ability of either Southwestern Bell or the City to make
any assignment of its rights or privileges.[14]  








We are required to
discern and give effect to the intent of the enacting body. To achieve this
goal, we must first attempt to discern that intent must come [sic] from the
plain language of the ordinance.  Our
obligation,  however, to enforce the
plain language of the ordinance does not authorize us to employ a
"bloodless literalism in which text is viewed as if it had no
context."  We are required to
consider the context and the consequences that would follow from a particular
interpretation, and we must avoid interpretations that would produce absurd
results or render other language mere surplusage.

City of Pearland v.
Reliant Energy Entex, 62 S.W.3d 253, 255 (Tex. App.BHouston [14th Dist.]
2001, pet. denied) (citations omitted). 

The fact that the
ordinance permits a "pass through" of the fees does not subject all
customers of Southwestern Bell who are subsequently billed for the
"pass-through" fees to the restrictive terms of the ordinance that
are binding upon either Southwestern Bell or the City.  

3.  The Texas Property Code

Southwestern Bell
urges that section 12.014 of the property code precludes the assignment of a
cause of action prior to the date on which suit is filed.  See Tex.
Prop. Code Ann. ' 12.014(a) (Vernon
2004).  The statute provides that "a
judgment or part of a judgment of a court of record or an interest in a cause
of action on which suit has been filed may be sold, regardless of whether the
judgment or cause of action is assignable in law or equity if the transfer is
in writing."  Id.  








Southwestern Bell
contends that this statute is an express effort by the legislature to limit
assignability of causes of action to only after a suit is filed.  The case relied upon by Southwestern Bell, McLaury
v. Watelsky, 87 S.W. 1045 (Tex. Civ. App.BFort Worth 1905, no writ), clearly dealt with the
assignment of a cause of action on which suit had already been brought.  Id. at 1046.  Our sister court observed that under the old
common law, causes of action for personal injuries were not assignable at
all.  Id. at 1049.  "It has been held that under said
article [the new statute] such an assignment to attorneys as compensation for
prosecuting the suit, is valid as against those having notice, though made
before a suit was commenced, and not filed or noted on the docket." Id.  

We do not find that
the statute in issue here was a direct effort by the legislature to limit
assignability of causes of action to only those situations where suit has already
been filed, but, rather, that its purpose was to require adequate notice of any
such assignment:

In the meantime the
Legislature, in 1889, had enacted article 6833,[15]
which provided that the sale of any cause of action or interest therein after
suit had been filed should be evidenced by written transfer filed among the
papers of the cause, and that said article should apply to all suits, claims,
and causes of action, whether assignable in law and equity, or not. This
statute is one of notice, and is also legislative recognition of the right to
barter and sell interests in . . . suits.

 

McCloskey v. San
Antonio Traction Co., 192 S.W. 1116, 1119 (Tex. Civ. App.BSan Antonio 1917, writ ref'd) (citing Gulf,
Colorado & Santa Fe Ry. Co. v. Wooten, 30 S.W. 684 (Tex. Civ. App.BDallas 1895, writ
dism'd) ("the Texas statute regulating the transfer of judgments, causes
of action, and interests therein, is merely one of notice")).[16]









We conclude that
nothing in the statute cited by Southwestern Bell precludes or invalidates the
assignments at issue in this matter simply because they were made prior to the
filing of suit. 

4.  Public Policy








Southwestern Bell
argues that permitting an assignee to function as the class representative in
the circumstances of this case will open the floodgates to improper
solicitation of causes of action and "entrepreneurial" class
actions.  We note the trial court
examined this issue at length, finding that (1) STA only took assignments from
pre-existing customers, (2) those customers were all previously members of the Mireles
class action from which the claims in this case were carved, and (3) STA did
not improperly solicit the customers. 
The trial court concluded, in detailed findings reflecting a considered
and rigorous analysis, that "under the facts of this case, the dangers
asserted by the Defendant are unfounded." 
The Texas Supreme Court has identified limited situations in which an
assignment should be declared void as against public policy.[17]  None of those situations are presented under
the facts of this case.  We decline to
overrule the trial court's findings on the basis of Southwestern Bell's public
policy arguments.

5.  Adequacy of Representation

 

Southwestern Bell
argues that STA is inadequate as a class representative for several
reasons.  First, it argues there is
inherent antagonism between STA's representation of all the various class
members, because payment or credit to one group will necessarily entail
additional charges to other portions of the group when any charges found to
have been improper are reallocated amongst the customers.  Southwestern Bell also argues that inherent
conflicts exist because (1) STA has only a financial motivation to pursue the
class action and, therefore, will not be amenable to alternative non-monetary
remedies; (2) assignments given to STA do not include the group of business
interests who paid for the Hotel/Motel measured service, and STA therefore
cannot be relied upon to adequately represent that sub-class; and (3) a
corporate class representative is inappropriate. 

Adequacy of
representation is a question of fact left to the sound discretion of the trial
court, and the trial court does not abuse its discretion in finding adequacy if
there is evidence to support the finding. 
Farmers Ins. Exch. v. Leonard, 125 S.W.3d 55, 66 (Tex. App.BAustin 2003, pet.
denied) (citing Glassell v. Ellis, 956 S.W.2d 676, 681-82 (Tex. App.BTexarkana 1997, pet.
dism'd w.o.j.).  Only a conflict that
goes to the very subject matter of the litigation will defeat a finding of
adequacy.  Id. (citing Nissan
Motor Co., Ltd. v. Fry, 27 S.W.3d 573, 583 (Tex. App.BCorpus Christi 2000,
pet. denied)).  








The trial court, after
a rigorous analysis and four days of hearing and testimony,  made several express findings, including
that: 

(1)  Evidence of STA's knowledge and expertise
about the billing procedures and information retrieval systems of Southwestern
Bell gives STA a superior ability to pursue this litigation and supervise
activities of class counsel;

 

(2)  STA has taken assignments of claims ranging
from small to large, STA therefore has an interest in asserting the rights of
all members of the putative class, and "there is sufficient evidence to
rule that the interests of STA are aligned with and not antagonistic to unnamed
putative class members;"

 

(3)  Claims related to the Hotel/Motel business
subclass arise out of the same unauthorized charge of municipal fees for
services as the claims advanced for the rest of the class, are substantially
similar to the claims of the putative classes as a whole, there is no evidence
of any conflict between the subclasses, and the claims are not competing;

 

(4)  There is no basis for allegations of
impropriety or barratry on the part of individual employees/experts of STA,
including Mr. Wilder, Mr. Shelton,[18]
and Mr. Clapsaddle, these individuals can adequately speak for STA as
representative of the class, and defenses of Southwestern Bell can be resolved
without skewing the focus of the litigation or degrading STA's ability to
pursue interests of the absent class members;[19]

 

(5)  There is no basis for finding a conflict or
antagonism between STA and the rest of the class, and any alleged intra-class
conflict is too speculative and hypothetical to bar class certification;

 








(6)  Sufficient evidence was presented to find
that "STA will vigorously prosecute this cause of action on behalf of the
putative class as class representative," and that, but for the efforts of
STA, the class members' claims would have been included in the Mireles
settlement which would have paid them nothing.

 

The record contains
evidence, including hearing and deposition testimony, to support the trial
court's findings as to adequacy.[20]  We conclude there is no conflict going
"to the very subject matter of the litigation," see Leonard,
125 S.W.3d at 66, and we will not, on this basis, disturb the conclusion of the
trial court that STA can adequately represent the interests of absent class
members as class representative.[21]


B.  Predominance Issues








Even if all requisites
of rule 42(a) are satisfied, STA is required to demonstrate that a class action
is maintainable because it satisfies one of the requisites of rule 42(b).  See
Tex. R. Civ. P. 42(a); 42(b)(3).[22]  In this suit, STA has argued, and the trial
court concluded, that a class action is appropriate because common issues of
fact and law predominate.  Southwestern
Bell argues, to the contrary, that the litigation effort will be predominated
by individualized rather than common inquiries and analyses, both as to
liability and as to damages.  It argues
that (1) causes of action for breach of express warranty and fraud (as part of
the unjust enrichment claim) include the element of reliance which militates
against a class action, and (2) damages cannot be determined absent an
individualized review and analysis of each class member's own billings and
payments.[23]

We note that
predominance is one of the most stringent requirements to be satisfied.  Bernal, 22 S.W.3d at 433-35.  The test for establishing predominance of
common issues is whether those issues will be the object of most of the efforts
of the parties and the court, not whether common issues outnumber individual issues.  Id. at 434.

1.  The Element of Reliance

Southwestern Bell
argues that the existence of reliance as an element precludes a finding of
predominance of common issues.  Several
causes of action are identified in the live pleadings, including unjust
enrichment and breach of express warranty. 


Reliance may be a
requisite element of a claim for breach of express warranty. 

While 'particular'
reliance may not be necessary, we have held several times that something rather
like it is. The basis‑of‑the‑bargain requirement 'loosely
reflects the common‑law express warranty requirement of reliance,' and
'reliance is also not only relevant to, but an element of proof of, plaintiffs'
claims of breach of express warranty (to a certain extent).

 

PPG Indus., Inc. v.
JMB/Houston Centers Partners, Ltd., 146 S.W.3d 79, 99 (Tex. 2004).[24]








Southwestern Bell also
asserts that reliance is a requisite element of the cause of action for unjust
enrichment.  We agree that a person may
recover under an unjust enrichment theory when one person has obtained a
benefit from another by fraud, duress, or the taking of an undue
advantage.  Heldenfels Bros., Inc. v.
City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992).  Fraud is not a requisite component for such a
recovery.  Indeed, unjust enrichment is
not a distinct independent cause of action,

but a theory of
recovery.  Mowbray v. Avery, 76
S.W.3d 663, 679 (Tex. App.BCorpus Christi 2002,
pet. denied).  Unjust enrichment is based
on the equitable principle that one who receives benefits unjustly should make
restitution for those benefits.  Villarreal
v. Grant Geophysical, Inc., 136 S.W.3d 265, 270 (Tex. App.BSan Antonio 2004, pet
denied); Mowbray, 76 S.W.3d at 679; Bransom v. Standard Hardware, Inc.,
874 S.W.2d 919, 927 (Tex. App.BFort Worth 1994, writ
denied).  To be entitled to restitution
under a theory of unjust enrichment, the plaintiff must show the party sought
to be charged had wrongfully secured a benefit or had passively received one
which would be unconscionable for that party to retain.  Villarreal, 136 S.W.3d at 270; Matagorda
County v. Texas Ass'n of Counties County Gov't Risk Mgmt. Pool, 975 S.W.2d
782, 785 (Tex. App.BCorpus Christi 1998), aff'd,
52 S.W.3d 128 (Tex. 2000).  The taking of
an undue advantage does not necessarily encompass the element of reliance.  








Even if we assume,
without deciding, that reliance is a requisite element of one of these claims,
a class action is not necessarily defeated. 
The issue is whether that element will become the focus of the
litigation, consuming the attention of the parties and the court and thereby
defeating the predominance of common issues. 
Bernal, 22 S.W.3d at 434. 
Here, Southwestern Bell asserts that presentation of its bills to
customers, which include a charge for franchise or municipal fees, is a
representation that the charge is due and owing, and one upon which customers
necessarily relied.  Even if true, it is
clear that such reliance would have been class-wide, not individualized.  We agree with the trial court that any such
reliance would have affected each class member in the same manner,[25]
and we therefore conclude that neither the cause of action for breach of
express warranty nor the theory of unjust enrichment is a bar to certification
of the class.

2.  Assessment of Damages








Southwestern Bell also
urges that, in the event of a finding of liability, any calculation of damages
will require such an individualized analysis of each customer's bill and
payment schedule that any predominance of common issues will be defeated.  A long list of potential individualized
inquiries is suggested by Southwestern Bell. 
However, those contentions were directly addressed at the certification
hearings.  Testimony was presented that a
computer program can be constructed to review the bills and payments and
perform the requisite mathematical calculations to determine damages and their
allocation to class members. 
Southwestern Bell rejects that testimony and contends it is entitled to
a fair opportunity to individual determination of damages for each of the
claims.  Southwestern Bell certainly
retains the right to dispute accuracy of calculations generated by a computer
model.  Nevertheless, the trial court
concluded that:

[I]nformation required
for the identification of class members, the determination of the amount of
unauthorized municipal charges, if any, collected by Defendant from each class
member, and the calculation of damages, is available in electronically or
visually recoverable form from SWBT [Southwestern Bell] records.  Extensive testimony was introduced on the
subject of the information which might not be available through defendants'
records in electronic format. . . . 
After evaluating the testimony presented by both sides, the Court finds
that the accumulation of evidence from Defendants' records is manageable and
can be accomplished without undue delay. 
The Court finds that the records of Defendant can be used to identify
members of the class and calculate damages should that become necessary.

 

We remain mindful that
our role is to indulge every presumption favorable to the trial court's
ruling.  Pina, 2005 Tex. App.
LEXIS 3198, at *13 (citing Graebel/Houston Movers, Inc. v. Chastain, 26
S.W.3d 24, 29 (Tex. App.BHouston [1st Dist.]
2000, pet. dism'd w.o.j.)), and then not to be bound by that presumption, but
to independently determine whether the requirements of rule 42 have been fully
satisfied.  Id.; Ocanas,
138 S.W.3d at 451; see also Schein, 102 S.W.3d at 691; Bernal, 22
S.W.3d at 435 (determining that actual compliance with rule 42 "must be
demonstrated; it cannot be presumed"). 








We conclude, based
upon our independent review, that the trial court performed a rigorous analysis
of the various aspects that must be satisfied before a class action can be
certified under rule 42, that the trial court found a basis in the evidence for
its conclusions and findings, that the trial court did not err as a matter of
law in reaching its conclusions, and that the class was properly certified.[26]  We make no conclusions as to the merits of
any of the claims presented.  

VI.  Conclusion

We affirm the order of
the court certifying the underlying matter as a class action and remand for
further proceedings on the merits.

 

ERRLINDA CASTILLO

Justice 

 

 

Opinion delivered and filed this 

the 4th day of August, 2005.

 

 

 

 

 

 











[1] Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(3) (Vernon Supp. 2004-05). 





[2] STA
owns 100% of the claims, but the customers retain an overriding interest in 70%
of any recovery realized by STA.  





[3]  Claims brought by STA included breach of
contract, unjust enrichment, breach of express warranty for services, and
negligence per se.





[4] The
trial court noted numerous depositions and testimony, none of which supported
allegations of barratry or impropriety in securing the assignments.

 





[5] The
trial court further noted that "[t]he question of whether or not the bills
themselves, and the individual items in them, constitute representations that
the bills are accurate and can be relied on is a question that is common to all
members of the class . . . .  The legal
effect of the representation on the bill that certain charges are due and owing
is a question the Court will address at the appropriate time. The Court's
ruling will affect all members of the class equally. . . .  If the Court determines that the bill is not
a written representation of its accuracy and does not constitute an express
warranty, then that ruling will apply equally to all members of the class. . .
.  The questions involved in this legal
theory are class wide questions susceptible to class wide proof."  





[6] Fidelity
and Guar. Life Ins. Co. v. Pina, 2005 Tex. App. LEXIS 3198 (Tex. App.BCorpus
Christi April 28, 2005, no pet. h.) has been designated as an opinion.  





[7] At
the time this class was certified, rule 42 contained four subdivisions.  On January 1, 2004, the amendments to Rule
42(b), which now contains only three subdivisions, became effective.  See Tex.
R. Civ. P. 42(b).  At the time of
certification, rule 42(b)(4) read as follows:

 

(4)
the court finds that the questions of law or fact common to the members of the
class predominate over any questions affecting only individual members, and
that a class action is superior to other available methods for the fair and
efficient adjudication of the controversy. 
The matters pertinent to the findings include:  (A) the interest of members of the class in
individually controlling the prosecution or defense of separate actions; (B)
the extent and nature of any litigation concerning the controversy already
commenced by or against members of the class; (C) the desirability or
undesirability of concentrating the litigation of the claims in the particular
forum; (D) the difficulties likely to be encountered in the management of a
class action.

 

Tex. R. Civ. P.
42(b)(4) (1977, amended 2004).  





[8]
Prior to this litigation, there was a separate case involving virtually the
same facts and circumstances, Mireles v. Southwestern Bell Tel. Co.,
Cause No. 98-07-3003-E, in the 357th Judicial District Court,
Cameron County, Texas.  The putative
class in Mireles included both residential and business customers of
Southwestern Bell.  STA was identified as
a class member in that matter.  (STA's
brief states only that STA was a class member, "as were all of the
businesses which assigned causes of action to STA.")  The settlement in Mireles involved an
agreement which did not encompass either distributed cash or service credits to
class members, but which did encompass a broad release.  STA formally objected to the settlement
because it would eliminate claims of the business customers, filed a petition
in intervention seeking to represent that group, and contacted business
customers of STA who were members of that group.  Five of those customers, for whom STA
provided auditing services, gave STA an assignment of their claims.  Prior to entry of the settlement, the parties
in that suit agreed to modify the release so that it would not affect the
business customers' claims, which were then "carved out" and brought
separately in this litigation.  





[9]
Assignment of certain causes of action are per se void, as against public
policy.  See State Farm Fire
& Cas. Co. v. Gandy, 925 S.W.2d 696, 707-11 (Tex. 1996).  





[10] See
Jackson v. Thweatt, 883 S.W.2d 171, 174 (Tex. 1994) (cert. denied sub
nom.) (concluding that assignees, as the FDIC's successors in interest, were
"entitled to the benefits of section 1821(d)(14) pursuant to the common
law maxim that 'an assignee stands in the shoes of his assignor.'").





[11]  STA also cites Pavano v. Shalala, 95
F.3d 147 (2d Cir. 1996), out of New York, in which plaintiffs included Medicare
beneficiaries "and their assignees." 
Id. at 148.  Typicality of
the class representative was not raised as an issue; the class was
certified.  





[12] We
note the trial court further expressly found "nothing improper about the
methods by which Plaintiff acquired the assignments."





[13]
Relevant claims include that Southwestern Bell "is charging so-called
'municipal charges' on certain customer services charges . . . when such
customer services charges do not satisfy all of the required conditions under
the applicable ordinances or franchise agreements."  





[14] We
further note that a suit brought against Southwestern Bell for improper levying
of charges is not a "right or benefit" of Southwestern Bell under the
ordinance.  





[15] We
note that Texas revised civil statute article 4647 (enacted in 1895) and article
6833 (enacted in 1911) are both predecessor statutes to Tex. Prop. Code Ann. ' 12.014(a) (Vernon 2004). 





[16] The McCloskey
court continued:

 

From
the foregoing, there can be no doubt that causes of action for personal
injuries are property subject to sale, barter, contract, or gift as any other
property, and that the common and civil law inhibition and condemnation of
dealing in causes of action is obsolete in Texas.  Since a claimant has the right to assign all
or any part of his cause of action, and all persons have the right to buy or acquire
the same or any part thereof, it is not unlawful for the appellant to acquire
an interest in any claim or claims.

 

McCloskey v.
San Antonio Traction Co., 192 S.W. 1116, 1120 (Tex. Civ. App.BSan
Antonio 1917, writ ref'd); see also Hunter v. B.E. Porter, Inc., 81
S.W.2d 774, 775 (Tex. Civ. App.BDallas 1935, no writ). 





[17] See.
Gandy, 925 S.W.2d at 707-11; see also PPG Indus., Inc. v. JMB/Centers
Partners, Ltd., 146 S.W.3d 79, 87 n.31 (Tex. 2004) (noting the distinction
between DTPA claims, which are personal and punitive, and warranty claims,
which are property-based).  





[18]
Southwestern Bell made no attack on the credibility of Mr. Shelton, STA's
president, as a witness.  





[19] The
trial court found "no evidence that these issues [suitability of Mr.
Wilder and Mr. Clapsaddle] are relevant to the claims of the litigation such
that they could become the focus of the litigation to the detriment of the
actual class claims."  





[20] We
note Southwestern Bell's arguments that the persons who represent STA are
"facially inadequate" to represent the interests of the class and
control the litigation.  The trial court
squarely addressed these contentions and in its order made specific and
extensive findings that dispensed with objections pertaining to Wilder, Shelton
and Clapsaddle, finding no impropriety or barratry, that Shelton has been an
active and credible participant, and that STA has and will continue to vigorously
pursue the interests of the class.  





[21] In
addition, we find no basis for the contention that a corporation may not serve
as a class representative.  





[22] See
n.5 above.





[23] We
note Southwestern Bell also argues that core liability issues "will most
likely be a question of law for the court, or at least a mixed question of law
and fact, that can be resolved with a minimum of proof and effort.  The bulk of the litigation effort will be
devoted to determining and assessing damages, if any." 





[24] In
PPG, the majority noted the distinctions between DTPA claims, which are
personal and punitive, and warranty claims, which are property-based and
therefore assignable.  PPG Indus.,
Inc. v. JMB/Houston Centers Partners, Ltd., 146 S.W.3d 79, 87-92 (Tex.
2004).





[25] The
trial court extensively analyzed and made findings with respect to these
reliance issues, including the following: 
(1) billing procedures are uniform for each member of the class; (2)
whether or not Southwestern Bell took an undue advantage is a common issue to
be answered the same for all members of the class; (3) Southwestern Bell
presents bills for services in substantially the same form to all its
customers; (4) any representation based on those bills is a written
representation which is uniform to all members of the class; and (5) if the
charges were unauthorized for one member, they were unauthorized for all.  In short, the trial court found these to be
common issues to be resolved by the trier of fact.  





[26]  We also note the trial court's attention to
how the matter would be tried and find that it adequately presented a viable
trial plan.